## BONWIT TELLER & CO., v. COMMISSIONER OF INTERNAL REVENUE.

### No. 246.

Circuit Court of Appeals, Second Circuit.

Aug. 25, 1931.

For findings of fact and opinion below, see 17 B. T. A. 1019.

Arthur B. Hyman, of New York City, for petitioner.

G. A. Youngquist, Asst. Atty. Gen., Sewall Key and John MacC. Hudson, Sp. Assts. to Atty. Gen. (C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and Stanley Suydam, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for respondent.

Before MANTON, SWAN, and CHASE, Circuit Judges.

SWAN, Circuit Judge.

The first question raised by this appeal relates to the valuation of a lease for the purpose of calculating deductions to be allowed for exhaustion. The taxpayer is the lessee of improved premises in New York City. The term ran for twenty-one years from October 1, 1911, and the rental was so favorable, according to the taxpayer's contentions, that on March 1, 1913, the lease had a fair market value of approximately $1,000,000. Pursuant to section 234(a) (7) of the Revenue Act of 1921 (42 Stat. 255) and sections 204(c) and 234(a)(7) of the Revenue Act of 1924 (43 Stat. 260, 284 [26 USCA §§ 935 note, 986]), the taxpayer claimed the right to deduct in each of the taxable years in question "a reasonable allowance for the exhaustion" of its leasehold. The Commissioner of Internal Revenue denied the taxpayer any deduction. The Board of Tax Appeals found the fair market value of the leasehold on March 1, 1913, to be $350,000, and held that this sum should be exhausted not only over the period of the original term, but also over an additional term of twenty-one years which the lessee had the option to obtain at a rental to be determined by an appraisal of the property to be made at the time of renewal. This gave an allowance for exhaustion of $8,850 for each of the years in question. It is the contention of the taxpayer that the Board erred both in adopting $350,000 as the 1913 value of the leasehold and in extending the exhaustion of that value beyond the original term.

The Board's finding of valuation is challenged as an arbitrary figure unsupported by the evidence. The taxpayer alone submitted evidence. Its valuation witness was well qualified as an expert and was thoroughly cross-examined. He expressed the opinion that the lease had a value of $982,952 on March 1, 1913, and then explained in detail how he arrived at this figure, namely, by taking the aggregate of the estimated annual rental values of the several floors of the building and deducting the estimated operating expenses, including rent under the lease. This resulted in an annual estimated profit of $88,000, which was capitalized at 6 per cent. for the remaining nineteen years of the lease to give the valuation the witness ascribed to the lease. The Board discounted his opinion because he made an error in

assuming that the annual rental remained constant after reaching $110,000, whereas in fact it rose to $130,000 for the last eleven years of the term. But this error could not account for any such deduction from his estimate as the Board made. Indeed counsel for the Commissioner cannot point to anything in the record to sustain the figure of $350,000 rather than any other figure which might have been adopted. Counsel's argument rests solely upon the proposition that the Board is not bound to accept as conclusive the valuation placed upon the property by the taxpayer's expert witness. As a general proposition this statement of law is sound, and it would justify the Board in adopting some other valuation than that to which the expert testified, provided there were sufficient basis in the record for the value adopted. In the case at bar neither the Board's opinion nor counsel's argument suggests any basis for the value adopted.

In Pittsburgh Hotels Co. v. Commissioner, 43 F.(2d) 345 (C. C. A. 3) the court held that a finding of 2 per cent. depreciation in certain property, in the face of testimony by six experts that 4 per cent. was a fair figure, could not stand when there was nothing in the record to indicate that the Board's estimate was based on facts in the record or on the Board's personal knowledge or experience. Similarly the Board's estimate of the value of good will was upset where several business men had testified to a higher figure and there was no contrary evidence. Boggs & Buhl v. Commissioner, 34 F.(2d) 859 (C. C. A. 3). The court said, at page 861: "* * * While the board may, as a general principle, reject expert testimony and reach a conclusion in accordance with its own knowledge, experience, and judgment, yet it must have knowledge of and experience with the particular subject under consideration. There is no evidence that the board had any independent and personal knowledge whatever of the business, reputation, and good will of the petitioner. Therefore it could not set aside or disregard all the positive and affirmative evidence as to the value of the good will, and base its conclusion upon conjecture. Midland Valley R. R. Co. v. Fulgham (C. C. A.) 181 F. 91, 95; De Ford v. Commissioner (C. C. A.) 29 F.(2d) 532. Consequently it should not have disregarded the only positive and direct evidence as to the value of the good will of the petitioner. Its order will accordingly be modified, and good will allowed to the extent of $975,000."

On similar grounds a finding was set aside in Nichols v. Commissioner, 44 F.(2d) 157 (C. C. A. 3). In Dempster Mill Mfg. Co. v. Burnet (App. D. C.) 46 F.(2d) 604, there was only one expert witness, and it was held error to disregard his testimony. There the evidence was thought too inconclusive for the court to direct a finding, and the case was remanded. This we believe to be the proper course to pursue in the present case.

■ It was also error to extend beyond the term of the lease the period over which exhaustion of the leasehold is to be spread. The renewal privilege had not been exercised, and may never be. There was no evidence as to the value of this privilege as a separate element in the valuation of the leasehold. Indeed, the expert testified on direct and redirect that he had not taken it into consideration, and this was apparent from his explanation of how he arrived at his figure of approximately $1,000,000. It is true that on cross-examination he did say that in his appraisal he had considered the fact that the lease contained an option to renew, but it would seem that he must then have been referring to an estimated ground rental of the property if unimproved. However, the result should be the same irrespective of whether the option of renewal entered into the estimated value of the lease. The problem is to compute the amount of exhaustion during the taxable year of "property used in the business." The property here in question was a leasehold having nineteen years to run, and containing an option to renew for twenty-one years at a rental to be determined by an appraisal of the property to be made at the time of renewal. Despite the uncertainty of the rental to be paid during the extension, the option may give additional value to the lease, just as many other types of provisions might give the lease value. But it is still true that the property being used in the business (the leasehold) will be exhausted in nineteen years. If the option should be exercised at the end of the existing term, there will be created a new term (new property) to be thereafter used in the business. The new term, when created, may or may not have value; if it has, allowance for the exhaustion of such new term will be in order. Let it be supposed that the option contained in the lease in question were to purchase the property at the end of the term. Such an option might readily enhance the value of the lease, but it could hardly be supposed to change the period during which the lease will become exhausted. Similarly in the case at bar we

see no basis for extending the period of exhaustion beyond the end of the term which was valued. See Appeal of Lenox Land Co., 5 B. T. A. 1206, 1210; Hinkel Dry Goods Co. v. Commissioner, 10 B. T. A. 228.

 In respect to the taxable year 1922, the taxpayer claimed a deduction of a $20,000 fee paid to a real estate broker for negotiating a lease on behalf of the taxpayer as lessor. The taxpayer was lessee of a building, not the premises covered by the lease hereinbefore referred to on the subject of valuation, and in 1922 "it leased to the Primrose Silk Company its entire interest in the building." For effecting this transaction the brokerage fee in question was paid. The Board of Tax Appeals held the fee not to be deductible as a business expense under section 234(a)(1) of the Revenue Act of 1921 (42 Stat. 254), but to be an investment of capital. This is assigned as error.

The evidence as to the form of the transaction being indefinite, the Board assumed that the fee was paid to secure a subtenant for a long term at a substantially higher rental than the taxpayer paid to its lessor, thus obtaining a regular annual gain throughout the term. On this assumption we see no error in considering the fee as an expenditure made in acquiring a contract returning annual payments to the taxpayer over a series of years. A fee paid to a broker for negotiating an annuity contract would pretty clearly be a capital expenditure to be added to the cost of the annuity rather than a business expense for the year when paid. The situation is similar when a long-term lease is made. In effect the lessor exchanges the leasehold estate for the lessee's obligations, and pays a broker a fee for negotiating the exchange. Whether the fee be deemed part of the cost of acquiring an exhaustible capital asset, or be deemed a business "expense" to be allocated to the appropriate year (the taxpayer keeping its books on the accrual basis), it would seem that truly to reflect annual income such a fee should be spread over the term of the lease rather than charged against the first year's income. This is the conclusion reached by the Board after some vacillation in its decisions. See Appeal of Crompton Building Corp., 2 B. T. A. 1056; Higginbotham-Bailey-Logan Co. v. Commissioner, 8 B. T. A. 566; Robert H. McNeill, 16 B. T. A. 479; Evalena M. Howard, 19 B. T. A. 865; Julia Stowe Lovejoy, 18 B. T. A. 1179; Roby Realty Co. v. Commissioner, 19 B. T. A. 696; Mary C. Young v. Commission-

er, 20 B. T. A. 692; 550 Park Ave. Corp., 20 B. T. A. 288. See, also, United Profit-Sharing Corp. v. United States, 66 Ct. Cl. 171; Galatoire Bros. v. Lines, 23 F.(2d) 676 (C. C. A. 5). Cf. Daly v. Anderson, 37 F.(2d) 728 (D. C. S. D. N. Y.); Klein Federal Income Taxation, 1931 Supp., par. 15:28. If under the actual transaction there was anything to make the brokerage fee an ordinary business expense deductible in the year when paid, the taxpayer failed to prove it, and the burden of proving the disallowance wrong was upon the petitioner. Reinecke v. Spalding, 280 U. S. 227, 50 S. Ct. 96, 74 L. Ed. 385.

 It is contended that the Board erred in sustaining the Commissioner's valuation of good will which might be included in invested capital. For the fiscal year ending January 31, 1922, the Commissioner assigned to the taxpayer's good will a book value of $285,000, and reduced this figure by $70,141.66 in order that the amount included in invested capital should not exceed the statutory limitation of 25 per cent. of the capital stock outstanding at the beginning of the taxable year. Section 326(a)(4) of the Revenue Act of 1921 (42 Stat. 274). It appears that, when the corporation was organized in 1907 to take over the business owned by Mr. Bonwit, $60,000 of stock and $600,000 of bonds were issued in exchange for the assets including good will, acquired by the corporation. The value assigned on the books to good will was $340,000. In 1911 the corporation was "reorganized," with an authorized capital of $800,000 common and $200,000 preferred stock, and the old bondholders exchanged their bonds for common stock. At that time the valuation of good will was reduced on the books of the corporation to $280,000. It is claimed that the $60,000 thus written off should be restored to the invested capital, as had been done by the Commissioner in two previous years. But it is settled law that the Commissioner is not precluded by his previous determination from a re-examination and redetermination of tax liability. Sweets Co. of America v. Commissioner, 40 F.(2d) 436 (C. C. A. 2); Burnet v. Porter, 283 U. S. 230, 51 S. Ct. 416, 75 L. Ed. 996. Consequently his present determination of the value of good will must stand unless overcome by the taxpayer's evidence. There is no evidence as to "the actual cash value" of the good will "at the time paid in," for the fact that it was entered on the books at $340,000 is not proof of actual cash value.

■ As to the item of $70,141.66 which the Commissioner deducted on account of the statutory limitation, it is urged that the good will was acquired in 1907 for $60,000 of stock and $280,000 of bonds, and that, when in 1911 the bonds were exchanged for stock of the increased capitalization, this was not an issuance of stock for good will, so that the statutory limitation has no application. All the assets of the business, including good will, were acquired in 1907 in exchange for stock and bonds. If it be assumed that the $60,000 of stock and $280,000 of the bonds were issued for the good will, this is not proof of the actual cash value of the good will at the time paid in. When the bonds were exchanged for stock in 1911, it may be assumed that an increase of the invested capital was brought about [cf. International Banding Mach. Co. v. Com'r, 37 F.(2d) 660 (C. C. A. 2)], but the invested capital so obtained would be the actual cash value of the bonds "at the time of such payment." Section 326(a)(2). Of this there is no evidence; nor is it apparent how the exchange of bonds for stock, even if the bonds were assumed to be worth their face, would warrant the inclusion of this item in the valuation of the good will acquired four years before. Cf. Landesman-Hirschheimer Co. v. Com'r of Int. Rev. (C. C. A.) 44 F.(2d) 521. Even if the petitioner be correct in its contention that the statutory limitation of 25 per cent. of the total outstanding stock was inapplicable, it would still have failed to meet the burden of showing an erroneous assessment, for it has not proved the value of its good will. It is not enough to show merely an error in the Commissioner's theory of valuation. The taxpayer must show that the amount which the Commissioner included in invested capital for good will was less than its actual value. See Landesman-Hirschheimer Case, supra.

■ The final contention asserts error in disallowing as ordinary and necessary business expenses for the years 1923 and 1924 certain sums entered on the taxpayer's books as charitable contributions. The entire testimony as to these items is the following: "In the fiscal years, 1923 and 1924, the sums of $5,447.49 and $2,640.64 were paid for theatre tickets, for program advertising for some hospital and similar schemes that so many of the lady customers of the petitioner are interested in. They cannot always be refused and some little money must be given to them to pacify them in order not to lose their patronage.

Those considerations actuated the expenditures in 1923 and 1924."

The Board characterized this testimony as "only a most cursory conclusion" by the taxpayer's president that the items in the aggregate were expenses. It held that the facts were not sufficiently proved to justify them in overruling the Commissioner's finding that they were not deductible as "ordinary and necessary expenses" in carrying on the business. The character of and necessity for the various items which made up the aggregate sum were left entirely vague. The evidence is altogether too general and indefinite to enable us to say the Board was wrong. Cf. Am. Rolling Mill Co. v. Commissioner, 41 F.(2d) 314 (C. C. A. 6); Corning Glass Works v. Lucas, 59 App. D. C. 168, 37 F.(2d) 798, 68 A. L. R. 736.

Order reversed, and cause remanded for further proceedings in conformity with this opinion.