COMMISSIONER OF INTERNAL REVENUE v. PITTSBURGH ATHLETIC CO.

No. 5324.

Circuit Court of Appeals, Third Circuit.

Sept. 11, 1934.

Frank J. Wideman, Asst. Atty. Gen., Sewall Key and John G. Remey, Sp. Assts. to Atty. Gen., and Carlton Fox, of Washington, D. C., for petitioner.

John R. Yates, of Washington, D. C., for respondent.

Before DAVIS and THOMPSON, Circuit Judges, and FAKE, District Judge.

THOMPSON, Circuit Judge.

This is a petition for review of a decision of the Board of Tax Appeals. The respondent, a baseball club belonging to the National League, purchased players' contracts at varying prices. Each contract provided for the employment of the named baseball player at a stipulated salary for all games played by the respondent during the designated year, and also provided that the contract could be assigned or terminated by the respondent or its assignee during that year upon ten days' written notice to the player.

Paragraph 8 of each contract reads:

"(a) On or before February 15th (or if Sunday, then the succeeding business day) of the year next following the last season covered by this contract by written notice to the Player at his address following his signature hereto (or if none be given, then at his last address of record with the Club), the Club or any assignee hereof may renew this contract for the term of that year except that the salary shall be such as the parties may then agree upon, or in default of agreement the Player will accept such salary rate as the Club may fix, or else will not play base-

ball otherwise than for the Club or for an assignee hereof.

"(b) The Club's right of reservation of the Player, and of renewal of this contract as aforesaid, and the promise of the Player not to play otherwise than with the Club or an assignee hereof, have been taken into consideration in determining the salary specified herein and the undertaking by the Club to pay said salary is the consideration for both said reservation, renewal option, and promise, and the Player's service."

Until 1928 the respondent, with the approval of the Commissioner of Internal Revenue, deducted in its annual income tax return the difference between the cost of the players' contracts purchased in each current year and the amount received during that year from the sale of the players' contracts. For 1928 and 1929 the respondent claimed as deductions the entire cost of contracts purchased in those years on the ground that the sums so spent constituted ordinary and necessary business expenses during the taxable years. The Commissioner disallowed such deductions, but permitted an amortization allowance of one-third the cost of the contracts, based on a finding that each contract had an average life of three years. For 1930 the respondent, accepting this finding, claimed a deduction for amortization of unexhausted contracts retained by it and included in its income tax return the profit or loss on all unexhausted contracts sold or disposed of in that year. The Commissioner disallowed amortization on contracts purchased prior to 1928 and allowed amortization on contracts purchased during 1928 and subsequent years at the rate of one-third of the cost for each year. The respondent appealed, and the Board of Tax Appeals held that the cost of the contracts acquired in 1928, 1929, and 1930 constituted a deduction in the year of acquisition.

The Commissioner thereupon took this appeal. He maintains that the cost of the contracts should not be deducted in full from gross income in the year of purchase, but should be capitalized and charged off over their life of three years or more. He contends that the respondent purchased not only the right to use the services of the player for a year, but also the right, at its option, to continue to use such service for a longer period.

An examination of the standard option clause contained in each contract reveals that the right given the respondent by the option is not absolute but qualified. Its right is dependent upon the player's continuance in professional baseball, which may be terminated because of his objection to an assignment to another club, or to the wages offered in a new agreement, or for many other reasons. Whatever the reason, if the player should cease to engage in professional baseball, the option for renewal of his contract would become valueless.

The Board of Tax Appeals had consistently held that the cost of contracts containing options to renew constituted capital expenditure recoverable over a period equal to the term of the contract as extended by the renewal option. In 1931, however, the Circuit Court of Appeals for the Second Circuit held that, although an option to renew a lease might enhance the value of the lease, it would not change the period during which the lease would become exhausted. Bonwit Teller & Co. v. Commissioner, 53 F.(2d) 381, 82 A. L. R. 325, certiorari denied 284 U. S. 690, 52 S. Ct. 266, 76 L. Ed. 582. By a parity of reasoning, the option to renew the players' contracts in the instant case might enhance the value of the contracts but would not change the period during which the contracts would become exhausted. Since 1931 the Board has applied the ruling in Bonwit Teller & Co. v. Commissioner, supra, and has held that the cost of a contract containing an option to renew is a business expense in the year when paid, and that the sum derived from the sale of a contract is income in the year in which received. We find ourselves in entire accord with the reasoning and conclusions of the Board of Tax Appeals.

The decision of the Board of Tax Appeals is affirmed.