**HELVERING, Commissioner of Internal Revenue, v. KANSAS CITY AMERICAN ASS'N BASEBALL CO.**

No. 9924.

Circuit Court of Appeals, Eighth Circuit.

Feb. 4, 1935.

Robert N. Anderson, Sp. Asst. to the Atty. Gen. (Frank J. Wideman, Asst. Atty. Gen., and Sewall Key, Sp. Asst. to the Atty. Gen., on the brief), for petitioner.

H. B. McCawley, of Washington, D. C., for respondent.

Before BOOTH, Circuit Judge, and MUNGER and BELL, District Judges.

BELL, District Judge.

This is a petition to review a decision of the Board of Tax Appeals involving income taxes for the year 1929.

The respondent, Kansas City American Association Baseball Company, owned and operated a professional baseball club, and was a member of the National Association of Professional Baseball Leagues. All members of the association used an approved, uniform players' contract which provides that the player shall play for the year stated at a specified salary; and that, in the event of an assignment of the contract, the player shall promptly report to the assignee club. The contract further provides:

"Renewal 8. (a) Each year, on or before March 1st (or if Sunday, then the succeeding business day) next following the playing season covered by this contract by written notice to the Player, the Club or any assignee thereof may renew this contract for the term of that year except that the salary rate shall be such as the parties may then agree upon, or, in default of agreement, such as the club may fix.

"(b) In default of agreement, the Player will accept the salary rate thus fixed or else will not play otherwise than for the Club or for an assignee hereof, subject to the right of appeal as provided in paragraph 9.

"(c) The reservation to the Club of the valuable right thus to fix the salary rate for the succeeding year and the promise of the Player not to play during said year otherwise than with the Club or an assignee hereof, have been taken into consideration in determining the salary specified herein and the undertaking by the Club to pay said salary is the consideration for both the reservation, renewal option and promise, and the Player's service."

The determination of the amount of taxable income for the year in question involves certain players' contracts acquired by respondent in 1927, 1928, and 1929, because of the sale of such contracts in 1929, and, because certain players refused to play, were released or retired without a consideration, as a result of which their contracts became worthless.

During and prior to 1929, the respondent, in keeping its books and in filing its income tax returns, charged the cost of players' contracts to expense in the year in which purchased, and returned as income for the year in which sold, the full amount of the selling price. The cost of players who terminated their contract or were retired without consideration prior to 1929 was deducted as expense in 1927 or 1928. The contracts sold in 1929 were acquired in 1927 or 1928, except those of two players whose contracts were acquired in 1929.

The tax liability of respondent for the years 1927 and 1928 was finally and conclusively determined by an agreement in writing by it and the Commissioner, with the approval of the Secretary of the Treasury, pursuant to the provisions of section 606 of the Revenue Act of 1928 (26 USCA § 2606). The cost of the contracts charged to expense in each of these two years, under the method pursued by the petitioner, exceeded an amount which would represent a reasonable allowance for those years for the exhaustion of players' contracts.

In determining a deficiency, the Commissioner included in income for 1929 the entire selling price received from the sales in that year of contracts acquired in prior years, the cost of which had been previously charged to expense by the taxpayer. The cost of the contracts of the two players acquired in 1929 and sold in the same year was applied against the selling price thereof. No deduction was allowed for the contracts which became worthless in 1929 on the ground that the cost thereof had been deducted in previous years. The cost of those contracts acquired in 1929, and on hand at the end of the year, was capitalized by the Commissioner, and exhaustion thereof allowed at the rate of 33⅓ per cent. The petitioner and respondent agreed that, if under the law the contracts should be capitalized and charged off over their useful life, the rate of charge off should be 33⅓ per cent.

The Board held that the accounting under the contracts should be on the basis of a one-year life; that the entire amount received in 1929 from the sales of contracts acquired in prior years, the cost of which had been deducted as expense in the year of acquisition, was income for 1929; that the cost of the two contracts acquired and sold in 1929 should be applied against the selling price and the resulting gain or loss included in or deducted from income; that no deduction should be allowed in 1929 for those

contracts which became worthless because the cost thereof had been deducted as expense in the year of their acquisition; and that no deduction for exhaustion of the contracts on hand at the end of 1929 should be allowed, for such contracts were for a term of one year only and the cost thereof should be deducted currently in the year in which paid or incurred. The Board entered an order of no deficiency and no overpayment.

The question presented is whether the cost of baseball players' contracts for a one-year term, with certain rights of renewal, should be deducted in full from gross income in the year of purchase as ordinary and necessary expense, or whether such cost should be capitalized and exhausted over a period of years representing the average useful life of the player.

Petitioner contends that the cost of the contracts is an investment of capital, subject to annual allowances for exhaustion or depreciation, and is not a reasonable allowance for ordinary and necessary expense incurred in the business or for salaries or other compensation for personal services actually rendered; and that the Board of Tax Appeals erroneously found that the contracts were for one year only, and that the accounting under such contracts should be on a basis of a one-year life.

Under the interpretations of the statutes and regulations [1] applicable to this case, the cost of a baseball player's contract contain-

---

[1] The pertinent provisions of the statutes and regulations involved are as follows:

The Revenue Act of 1928 provides:

"Sec. 23. *Deductions from Gross Income.* In computing net income there shall be allowed as deductions:

"(a) *Expenses.* All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered; * * *

"(k) *Depreciation.* A reasonable allowance for the exhaustion, wear and tear of property used in the trade or business, including a reasonable allowance for obsolescence. * * * *" 26 USCA § 2023 (a, k).

Treasury Regulations 74, promulgated under the Revenue Act of 1928, provide:

"Art. 121. *Business Expenses.*—Business expenses deductible from gross income include the ordinary and necessary expenditures directly connected with or pertaining to the taxpayer's trade or business, except the classes of items which are deductible under the provisions of articles 141–271. The cost of goods purchased for resale, with proper adjustment for opening and closing inventories, is deducted from gross sales in computing gross income. (See article 55.) Among the items included in business expenses are management expenses, commissions, labor, supplies, incidental repairs, operating expenses of automobiles used in the trade or business, traveling expenses while away from home solely in the pursuit of a trade or business (see article 122), advertising, and other selling expenses, together with insurance premiums against fire, storm, theft, accident, or other similar losses in the case of a business, and rental for the use of business property. A taxpayer is entitled to deduct the necessary expenses paid in car-

rying on his business from his gross income from whatever source. As to items not deductible, see section 24 and articles 281–284. * * *

"Art. 202. *Depreciable Property.*—The necessity for a depreciation allowance arises from the fact that certain property used in the business gradually approaches a point where its usefulness is exhausted. The allowance should be confined to property of this nature. In the case of tangible property, it applies to that which is subject to wear and tear, to decay or decline from natural causes, to exhaustion, and to obsolescence due to the normal progress of the art, as where machinery or other property must be replaced by a new invention, or due to the inadequacy of the property to the growing needs of the business. * * *

"Art. 203. *Depreciation of Intangible Property.*—Intangibles, the use of which in in the trade or business is definitely limited in duration, may be the subject of a depreciation allowance. Examples are patents and copyrights, licenses, and franchises. Intangibles, the use of which in the business or trade is not so limited, will not usually be a proper subject of such an allowance. If, however, an intangible asset acquired through capital outlay is known from experience to be of value in the business for only a limited period, the length of which can be estimated from experience with reasonable certainty, such intangible asset may be the subject of a depreciation allowance, provided the facts are fully shown in the return or prior thereto to the satisfaction of the Commissioner. No deduction for depreciation, including obsolescence, is allowable in respect of goodwill.

"Art. 204. *Capital Sum Recoverable through Depreciation Allowances.*—The capital sum to be replaced by depreciation allowance is the cost or other basis of the

603

ing only a qualified option of renewal, acquired by a taxpayer, is ordinary and necessary expense, deductible in full in the year in which paid, and should not be capitalized and charged off over a period of years representing the average useful life of the player. Commissioner of Internal Revenue v. Pittsburgh Athletic Company (C. C. A.) 72 F.(2d) 883; Bonwit Teller & Company v. Commissioner (C. C. A.) 53 F.(2d) 381, 383, 82 A. L. R. 325; Pittsburgh Athletic Company v. Commissioner, 27 B. T. A. 1074.

The Board of Tax Appeals held contra in two cases. In Dallas Athletic Association v. Commissioner, 8 B. T. A. 1036, the Board held that the cost of baseball players' contracts represented a capital expenditure; but, since the rights acquired by the petitioner thereunder were not shown by the evidence to have been exhausted or diminished by the lapse of time, it was not entitled to a reduction for exhaustion in that case. Later in Houston Baseball Association v. Commissioner, 24 B. T. A. 69, the Board held that the petitioner was entitled to a deduction for exhaustion of players' contracts where the evidence showed exhaustion and that it could be calculated on the basis of the useful playing life of the players. Then followed the decision in the Bonwit Teller Case, supra, in which the taxpayer owned a lease covering improved premises, the term running for twenty-one years from October 1, 1911, with a right to renew for twenty-one years at a rental to be agreed upon or at 5 per cent. of the value of the land and building as shown by an appraisal to be made at the time of renewal. The Board allowed deductions in each taxable year for exhaustion of the lease based upon the March 1, 1913, value

of the lease apportioned over a forty-year period, that is, nineteen years, the unexpired term of the original lease, and twenty-one years which the lessee had the option to obtain. The Circuit Court of Appeals reversed the Board, and held that the March 1, 1913, value of the lease should be spread over the unexpired term of the original lease. The court said:

"The renewal privilege had not been exercised, and may never be. * * * The problem is to compute the amount of exhaustion during the taxable year of 'property used in the business.' The property here in question was a leasehold having nineteen years to run, and containing an option to renew for twenty-one years at a rental to be determined by an appraisal of the property to be made at the time of renewal. Despite the uncertainty of the rental to be paid during the extension, the option may give additional value to the lease, just as many other types of provisions might give the lease value. But it is still true that the property being used in the business (the leasehold) will be exhausted in nineteen years. * * * Let it be supposed that the option contained in the lease in question were to purchase the property at the end of the term. Such an option might readily enhance the value of the lease, but it could hardly be supposed to change the period during which the lease will become exhausted. Similarly in the case at bar we see no basis for extending the period of exhaustion beyond the end of the term which was valued."

On authority of the Bonwit Teller Case the Board, in Pittsburgh Athletic Company v. Commissioner, 27 B. T. A. 1074, involving a contract identical with the one involved in

property in respect of which the allowance is made. * * *

"Art. 282. *Capital Expenditures.*— Amounts paid for increasing the capital value or for making good the depreciation (for which a deduction has been made) of property are not deductible from gross income. (See section 23 (k) and article 201.) Amounts expended for securing a copyright and plates, which remain the property of the person making the payments, are investments of capital. * * *

"Art. 321. *Computation of Net Income.* —Net income must be computed with respect to a fixed period. Usually that period is 12 months and is known as the taxable year. Items of income and of expenditures which as gross income and deductions are elements in the computation of net income need not be in the form of cash.

It is sufficient that such items, if otherwise properly included in the computation, can be valued in terms of money. The time as of which any item of gross income or any deduction is to be accounted for must be determined in the light of the fundamental rule that the computation shall be made in such a manner as clearly reflects the taxpayer's income. If the method of accounting regularly employed by him in keeping his books clearly reflects his income, it is to be followed with respect to the time as of which items of gross income and deductions are to be accounted for. (See articles 331–333.) If the taxpayer does not regularly employ a method of accounting which clearly reflects his income, the computation shall be made in such manner as in the opinion of the Commissioner clearly reflects it."

this case, held: "The contracts here involved were only for one year, with the option of renewal. If renewed, there is another contract. The one year contract is the 'property used in the trade or business.' The cost of one-year contracts should be allowed as a deduction in the year acquired."

The petitioner contends that there is a distinction in the lease in the Bonwit Teller Case and the contracts here involved, in this, that in the case of the lease there could be no certainty at the time of its execution that the renewal privilege would be exercised at the end of a period of nineteen years; while in the case of ball players' contracts covering a term of one year renewal was so reasonably certain that the contracts, instead of being for one year, were, in effect, for the useful playing life of the player. However, this contention, as to the value and character of the renewal provisions of the contracts, is answered in the case of the Commissioner v. Pittsburgh Athletic Company (C. C. A.) 72 F.(2d) 883, 884, wherein the court said: "An examination of the standard option clause contained in each contract reveals that the right given the respondent by the option is not absolute but qualified. Its right is dependent upon the player's continuance in professional baseball, which may be terminated because of his objection to an assignment to another club, or to the wages offered in a new agreement, or for many other reasons. Whatever the reason, if the player should cease to engage in professional baseball, the option for renewal of his contract would become valueless."

Obviously, the options add to the value of the contracts; but it cannot be said that they extend the life of the contracts beyond one year, because of the uncertainty of their renewal. The option is qualified; the power of the taxpayer to renew the contracts is not absolute, but is contingent on the inclination and ability of the players to render personal services requiring a high degree of skill and training.

The petitioner has directed the attention of the court to a number of cases involving leases that contained options to renew wherein it has been held that the entire exhaustion allowance should not be allocated to the comparatively short term of the original lease when it clearly appeared that the chief value was in the right to renew for a long term. In other words, where the original term of a lease is of short duration and there is an absolute option to renew for a long term, exhaustion over the original term could not be justified. Under such circumstances, it is doubtful whether an exhaustion allowance confined to the original term would meet the statutory requirement of reasonableness. Such authorities are not applicable here.

Therefore, on principle and on the theory adopted by the authorities above cited, the cost of ball players' contracts containing qualified options for renewal is ordinary and necessary expense of the business in the year when paid, and the sum received from the sale of such contracts is income for the year in which received.

The petitioner contends that another question is presented as follows: "May the taxpayer, in ascertaining the amount of profit from the sale of said contracts during the year 1929, or in computing the extent of the exhaustion thereof, consider any part of the cost of those contracts which had been previously recovered in the years of their acquisition in the form of expense deductions from income?"

The opinion of the Board does not so hold, and the finding of no deficiency is not based on a double deduction. The Board held: "* * * as to any player whose purchase price was deducted as an expense in a prior year the total amount received in 1929 through sales constituted income. * * * In the case of the three players who jumped their contracts or were released without consideration, petitioner deducted the cost of the players in the year of acquisition. Obviously, there is no loss on their separation in 1929."

The record shows that during and prior to the year involved the petitioner charged the cost of ball players' contracts to expense in the year in which purchased and returned as income, for the year in which sold, the full amount of the selling price. According to the decision of the Board, with which we are in accord, this was proper.

The decision of the Board of Tax Appeals is affirmed.