COMMISSIONER OF INTERNAL REVE-
NUE v. PHILADELPHIA COKE CO.

No. 7892.

Circuit Court of Appeals, Third Circuit.

Argued April 7, 1942.

Decided July 29, 1942.

Benjamin M. Brodsky, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and J. Louis Monarch, Sp. Asst. to Atty. Gen., on the brief), for petitioner.

John E. McClure, of Washington, D. C. (Maude Ellen White, David W. Richmond, and Miller & Chevalier, all of Washington, D. C., on the brief), for respondent.

Before BIGGS, JONES, and GOOD-RICH, Circuit Judges.

JONES, Circuit Judge.

The question in this case is whether expenditures for capital improvements to the property of another made under a contract contemplating the improver's use of the property for a definite term shall be amortized on the basis of the term of the contract or on the basis of a shorter period as determined by the earlier termination of the contract through the happening of a specified contingency.

The City of Philadelphia, as owner of a plant for the manufacture of gas, made a lease thereof effective January 1, 1928, to United Gas Improvement Company (hereinafter referred to as "United") for an unlimited period with the right in either party to terminate the contract on December 31, 1937, or at the expiration of any ten year period thereafter upon compliance with certain specified conditions. United, with the approval of the City, assigned the lease to its wholly owned subsidiary, Philadelphia Gas Works Company (hereinafter referred to as "Gas Company").

In January of 1928 Gas Company entered into a contract with the respondent herein, Philadelphia Coke Company (hereinafter referred to as "Coke Company"), for the sale of gas by Coke Company to Gas Company. This contract was for a definite period of thirty years, subject, however, to earlier termination if the contract between the City and Gas Company, as assignee, was terminated. In January 1929 a supplemental agreement was entered into by Gas Company and Coke Company whereby the latter agreed to construct a twenty-inch gas main from its plant to plants of Gas Company. Coke Company performed this undertaking and the gas main, which was completed and put into service January 1, 1930, cost Coke Company $692,985.27. By the terms of the supplemental agreement between Gas Company and Coke Company title to the gas main vested in Gas Company upon completion and inspection of the main.

In its income tax returns for 1934 and 1936 Coke Company claimed as a deduction for depreciation a proportionate part (approximately 1/28) of the cost of the gas main in amounts of $25,062.87 and $24,681.-34, respectively, in the belief that the cost of the gas main was to be amortized over the period from January 1, 1930, to December 31, 1957 (the expiration of the term of the original contract between Gas Company and Coke Company). The Commissioner allowed these deductions.

On March 13, 1936, the Mayor of Philadelphia, pursuant to an ordinance of the City, notified United and Gas Company of the City's intention to terminate the agreement of lease between them on December 31, 1937; and Gas Company on April 7, 1936, notified Coke Company that because of the Mayor's notice of termination the agreement between the two latter companies would also terminate on the same day. On December 27, 1936, the City's council, over the Mayor's veto, directed that a new lease be made by the City with Gas Company for a term beginning January 1, 1938, and containing a provision that the existing contract between Gas Company and Coke Company should not be extended beyond December 31, 1937. The Mayor threatened to take possession of and operate the City's gas plant. Thereupon, a suit was instituted to enjoin the Mayor and the City from terminating the lease between the City and Gas Company. During the period of that litigation, Coke Company entered into a temporary agreement with Gas Company whereby it continued to supply the latter with gas.

On June 30, 1938, the Supreme Court of Pennsylvania rendered a final decision (Philadelphia Gas Works Co. v. City of Philadelphia, 331 Pa. 321, 1 A.2d 156) enjoining the Mayor and the City from interfering with Gas Company's peaceable possession of the City's gas plant. The principal ground of the decision was that, although the contract between the City and Gas Company could have been terminated by the City on December 31, 1937, such termination was to be accomplished only by compliance with the specified conditions in the agreement of lease and that, since these conditions had not been complied with by the City, the agreement had not been terminated.

Following the decision of the Pennsylvania Supreme Court, the temporary agreement between Gas Company and Coke Company was cancelled and a retrospective agreement dated July 15, 1938, was entered into between them covering the period from January 1, 1938, to January 15, 1939. Thereafter several additional agreements were entered into between Gas Company and Coke Company extending the agreement to March 31, 1940. By agreement dated April 1, 1940, Gas Company contracted for a supply of gas by Coke Company for a five year period from the date of the agreement and thereafter from year to year unless and until the agreement was terminated. That agreement was approved by ordinance of City council on April 16, 1940.

After the Mayor's notice of termination of March 13, 1936, to United and Gas Company and during the course of the negotiations leading up to the agreement between Gas Company and Coke Company on April 1, 1940, Coke Company prepared and filed claims for tax refunds for the years 1934 and 1936 on the ground that its property right under its original contract with Gas Company was terminable at the end of eight years and that, therefore, the cost of the gas main should be amortized over the eight year period. The respondent accordingly sought an increase in the annual allowable deduction for depreciation on account of the gas main. The Commissioner ruled that the thirty year term of the original contract between Gas Company and Coke Company governed the annual rate of deduction allowable for depreciation of the gas main regardless of the provision for the possible earlier termination of the contract. The Board of Tax Appeals, adopting the respondent's contention, held that the cost of the gas main should have been amortized over the eight year period which would have endured upon the termination of the contract between Gas Company and Coke Company on December 31, 1937, if the Mayor's action looking to the cancellation of the City's lease had become effective. The pending petition by the Commissioner seeks a review of the Board's decision.

The allowance of a deduction for depreciation is provided for by Sec. 23(l) of the Revenue Acts applicable to the years here involved.[1] In part material the provision reads as follows:

"Sec. § 23. *Deductions from gross income.*

"In computing net income there shall be allowed as deductions:

\* \* \* \* \*

"(l) *Depreciation.* A reasonable allowance for the exhaustion, wear and tear of property used in the trade or business, including a reasonable allowance for obsolescence. \* \* \*"

In support of its contention, the respondent relies, as did the Board, upon the de-

---

[1] Revenue Act of 1934, c. 277, 48 Stat. 680, and Revenue Act of 1936, c. 690, 49 Stat. 1648, 26 U.S.C.A. Int.Rev.Code § 23 (l).

cision in the case of Bonwit Teller & Co. v. Commissioner, 2 Cir., 53 F.2d 381, 383, 82 A.L.R. 325, certiorari denied 284 U.S. 690, 52 S.Ct. 266, 76 L.Ed. 582. In the Bonwit Teller case the property to be depreciated was a leasehold having nineteen years to run, the lease containing an option on the part of the tenant to renew for an additional term of twenty-one years. The Court of Appeals held that the leasehold was to be amortized during the period of its original term (nineteen years) rather than over the original term plus the renewal period. The Court said that "it is still true that the property being used in the business (the leasehold) will be exhausted in nineteen years. If the option should be exercised at the end of the existing term, there will be created a new term (new property) to be thereafter used in the business." A number of cases have since followed the decision in the Bonwit Teller case.[2] The Commissioner does not question the decisions in those cases. He contends, rather, that they are not applicable in the present situation.

The respondent's contention is based upon an apparent fallacy that it "has a lease absolutely for only ten years, but which may be for another ten years—not at the election of the taxpayer but only at the choice of a third party". (Respondent's Brief, p. 12.) The absolute term of the respondent's contract with Gas Company was thirty years subject to a possible earlier termination if certain events took place. As against the respondent, Gas Company had an enforceable right which would endure for thirty years unless the event stipulated for an earlier termination of the contract occurred. But so far as the rights of the parties to the contract were concerned, the respondent could not possibly withdraw from its obligations within the thirty year term without subjecting itself to liability to Gas Company. And, by the same token, the respondent possessed certain reciprocal rights against Gas Company for a period of the term if uninterrupted. So long as the contract would continue to the limit of its definite term the same property rights would exist throughout. No new property or estate would be created or come into being at either of the two intervening ten year periods. Cf. Bonwit Teller & Co. v. Commissioner, loc. cit. supra.

■ A somewhat analogous situation is an estate for years which, as is generally recognized, comes to an end at the expiration of its specified term without any notice from the landlord to the tenant or from the tenant to the landlord. Ashhurst v. Eastern Pennsylvania Phonograph Co., 166 Pa. 357, 359, 31 A. 116. In the same way, the contract between Gas Company and Coke Company for the purchase and sale of a commodity for a period of years would expire at the end of the definite term without any notice in such connection by the parties thereto or by any third party. Short of mutual agreement between the parties to the contract, any prior termination of it would rest alone upon the happening of the specified contingency, viz., action by the City or the Gas Company in properly terminating the lease between them. It is not an uncommon practice to subject estates for years to "special limitations" whereby an estate may be terminated before the expiration of its definite term. See generally 1 Tiffany, Real Property, 3d Ed., §§ 147-154, inclusive. Yet, in no instance will it appear that the definite term of the estate is considered to be lessened by the presence of a possibility of earlier termination. The option to renew a lease for an additional term, such as in the Bonwit Teller case, is at most a mere possibility and therefore properly ignored in amortizing the value of the original lease. The same may be said for the situation in the instant case. The contingency upon which the contract between Gas Company and Coke Company might be terminated before the end of the definite term was a mere possibility and, as such, not to be considered in amortizing the lease which is to be amortized on the basis of its prospective term as written.

■ In 1934 and 1936 the respondent understood the rate of depreciation was to be based upon the thirty year term of the contract and claimed deductions accordingly, which the Commissioner allowed. It was only after the City gave notice of the termination of its lease to Gas Company, which proved to be abortive, that the respondent changed its position and asserted

2 Helvering v. Kansas City American Ass'n Baseball Co., 8 Cir., 75 F.2d 600, 604; Commissioner v. Pittsburgh Athletic Co., 3 Cir., 72 F.2d 883, 884; 379 Madison Avenue v. Commissioner, 2 Cir., 60 F.2d 68, 70; 719 Fifth Avenue Co. v. United States, Ct.Cl., 5 F.Supp. 909, 912; 353 Lexington Avenue Corporation v. Commissioner, 27 B.T.A. 762, 764.

a right to amortize the cost of the gas main over a shortened period. While this is not to be taken as conclusive of the respondent's rights, it does at least confirm the fact that, in viewing the situation in 1934 and 1936, necessarily without the benefit of knowledge of subsequent events, the only probability was that the contract would endure for thirty years and that a prior termination of it at the intervening ten and twenty year periods was but a possibility. The cases on amortization have one general principle in common, viz., that in determining the allowable rate of depreciation only the elements which are certain are to be considered. As a consequence, it is the specified term of the lease or contract to be depreciated which enters into the calculation. Its certainty lies in the fact that only the happening of some contingency may possibly extend or terminate it. The probability of the definite term is therefore deemed to be controlling and not the mere possibility of an earlier termination.

We think that the depreciation which the Commissioner allowed the respondent in 1934 and 1936 for the amortization of the cost of the gas main was correct.

The decision of the Board of Tax Appeals is reversed.