## FACKLER v. COMMISSIONER OF IN-TERNAL REVENUE.
### No. 9226.

Circuit Court of Appeals, Sixth Circuit.

Feb. 4, 1943.

W. Dean Hopkins, of Cleveland, Ohio (John D. Fackler and W. Dean Hopkins,

both of Cleveland, Ohio, on the brief), for petitioner.

Warren F. Wattles, of Washington, D. C. (Samuel O. Clark, Jr., Sewall Key, and Warren F. Wattles, all of Washington, D. C., on the brief), for respondent.

Before HICKS, ALLEN, and HAMILTON, Circuit Judges.

HAMILTON, Circuit Judge.

This is a proceeding to review a decision of the Board of Tax Appeals (now the United States Tax Court).

The Commissioner of Internal Revenue found a deficiency in petitioner's income tax for the calendar year 1938 in the sum of $4,639.67 which deficiency was sustained by the Board. The additional tax grows out of a profit realized from the sale of a leasehold.

On August 22, 1933, petitioner became lessee for a ninety-nine year lease, renewable forever, the lessor being the fee owner of certain lands with improvements thereon at 823 Prospect Avenue, in the business section of Cleveland, Ohio.

The property had on it a six-story building erected in 1916. The lease provided for the payment of an annual rental of $10,000 for the first five years of the term and $12,000 thereafter, for the ground and improvements. The lessee was to pay all real estate taxes, special or other assessments, water rents and other public charges already assessed or imposed upon the premises and unpaid and those thereafter assessed or imposed thereon during the term of the lease. The lessee was required also to keep the building on the premises in good repair and, in case of its destruction, to erect new improvements at a cost of not less than $200,000. In the event the lease was not renewed at the end of any term, all improvements on the property reverted to the lessor. The lessee was granted an option to purchase the property for the sum of $250,000 at the end of the lessor's life.

At the time petitioner acquired the property, all space in the building was occupied. When subsequent vacancies occurred, petitioner sought new tenants through his own efforts, and did not list the property with a real estate agency but was willing to pay commissions to persons who obtained tenants for him. About 1936, petitioner closed all of the building except the ground floor, which, with the basement,

was thereafter rented. In 1938, the rear of the first floor was occupied by the Western Union Telegraph Company and the remainder of the space was rented to tenants who operated a drug store, electrical store and haberdashery store. The basement was used by a tenant for the operation of a restaurant and barber shop. Two tenants moved out before April 1938 and the space used by them was thereafter vacant.

On September 30, 1938, petitioner sold the leasehold for $35,000 thereby realizing a net taxable gain of $29,064.32. The Board included this gain in petitioner's gross income under the provisions of Section 22(a) of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 22(a). Petitioner contended before the Board, and now insists, that his gain was from the sale of a "capital asset" as defined in Section 117(a) (1) of the Revenue Act of 1938, Internal Revenue Code 117(a) (1), 26 U.S.C.A. Int.Rev.Code, § 117(a) (1), and that only 50% of the gain should be taxed. Internal Revenue Code, § 117(b), 26 U.S.C.A. Int.Rev.Code, § 117(b).

The question turns on the interpretation of Section 117(a) (1) integrated with Section 23(l) of the Revenue Act of 1938, Internal Revenue Code § 23(l), 26 U.S.C. A. Int.Rev.Code, §′ 23(l).

Section 117(a) (1) defines "capital asset" as property held by the taxpayer whether or not connected with his trade or business, but excludes property used "in the trade or business, of a character which is subject to the allowance for depreciation provided in section 23(l)."

Section 23(l) provides "a reasonable allowance for the exhaustion, wear and tear of property used in the trade or business, including a reasonable allowance for obsolescence."

Petitioner is a busy and successful lawyer and devotes all of his time to the practice of his profession. According to the findings of the Board, petitioner visited the leasehold premises once or twice each month, which consumed one or two hours of his time.

The Congress recognized that taxing at the same rates as other income, the gain on the sale of property which had been held over a period of years, would result in the pyramiding of income in the year of realization and that excessive tax burdens on gains resulting from conversion of capital assets was a deterrent to both the

revenue and industry. House Report No. 350, Ways and Means Committee, 67th Cong. 1st Sess. on the Revenue Bill of 1921, p. 10.

In order to remove these hindrances, the Revenue Act of 1921, c. 136, 42 Stat. 231, taxed certain income derived from capital gains at a lower rate than other income. The Revenue Act of 1924, c. 234, 43 Stat. 262, carried its own definition of capital assets and by Section 208(a) (8), 26 U.S. C.A. Int.Rev.Acts, page 13, it defined such assets to mean property held by the taxpayer for more than two years, but excluded property "which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale in the course of his trade or business." This definition was retained in substantially the same form in subsequent revenue acts until the Act of 1938, in which the additional exclusion was added "property, used in the trade or business, of a character which is subject to the allowance for depreciation." This definition excluded business buildings, but not land. In applying this statute to a sale or other disposition of real property consisting of land and improvements, the Commissioner apportions the net proceeds of the sale on the basis of the value of the land and the value of the depreciable improvements on the date of the sale. I. T. 3217, 1938-2, C. B. 94; I. T. 3246, 1939-1 (Part 1), C. B. 137.

The gain from the sale of the land is taxed as arising from the sale of a capital asset and the gain from improvements as ordinary income. The 1942 Revenue Act, 26 U.S.C.A. Int.Rev.Acts, effective for taxable years beginning after December 31, 1941, excludes from capital assets all business real estate which includes land.

Under all the Revenue Acts since 1921, if real estate and improvements are not used in trade or business, gains derived or losses incurred from the sale or exchange thereof, have been treated as items growing out of the disposition of capital assets. As we view it, the 1942 amendment is not material here as a guide for the interpretation of the 1938 Act.

The Board found that the lease in question was property of the taxpayer used in his trade or business and of a character subject to an allowance for depreciation, and therefore under the express terms of the statute that it was not a capital asset. This was the determination of

an ultimate fact. We are limited therefore to an examination of the record to ascertain whether there is any substantial evidence to sustain the findings of the Board. Helvering v. Rankin, 295 U.S. 123, 133, 55 S.Ct. 732, 79 L.Ed. 1343. Petitioner sold neither lands nor buildings but a leasehold. The question subdivides into two branches, (1) Was the leasehold used by petitioner in a trade or business? (2) Was it of a character subject to an allowance for depreciation?

There is a trite definition of trade or business which is probably sufficient for the disposition of the question here. It is "that which occupies the time, attention, and labor of men for the purpose of a livelihood or profit." Flint v. Stone Tracy Company, 220 U.S. 107, 171, 31 S.Ct. 342, 357, 55 L.Ed. 389, Ann.Cas.1912B, 1312. The difficulty centers around the problem that petitioner here was engaged in a profession which admittedly occupied all of his business hours, but there is such a thing as carrying on a business through agents which is in fact a common practice. The question is one of degree, or "where to draw the line." Irwin v. Gavit, 268 U.S. 161, 45 S.Ct. 475, 476, 69 L.Ed. 897. Justice Holmes there said that a question of degree was the only one worth arguing in the law.

In its findings of fact the Board found petitioner had gross rentals from the leasehold ranging from $33,983.69 in 1934 down to $19,349.78 in the nine months of 1938. Excluding ground rent and taxes, the Board found petitioner had operating expenses ranging from $15,902.33 in 1934 to $6,557.03 in 1938. In the schedule of receipts and expenditures in the operation of the property, it is shown that petitioner paid out in wages in 1934, $10,346.17; 1935, $10,229.06; 1936, $8,522.98; 1937, $1,596.67; 1938, $750.02. Petitioner sustained a net operating loss for the years 1934 to and including 1937, and for 1938, a net profit.

It is a fair inference from the evidence that petitioner acquired the leasehold with the primary intention of operating the building upon it for profit and that he was not holding the property merely as an investment and solely for the purpose of collecting rents without rendering personal service to tenants. The fact may not be disputed that a person may engage in both a profession and a business [Mente v. Eisner, 2 Cir., 266 F. 161, 11 A.L.R. 496]

and the fact that petitioner was engaged in the practice of law does not at all negative the fact that he was also engaged in the business of operating the building. The management of the property necessarily involved alterations and repairs commensurate with the number of tenants who occupied the building. It was also necessary to furnish elevator service, heat, light and water which required regular and continuous activity and the employment of labor, the buying of material and many other things which come within the definition of business. Commissioner of Internal Revenue v. Boeing, 9 Cir., 106 F.2d 305.

 Petitioner urges that the income arising from the sale of the leasehold is not within the statutory exclusion, because he sold the business as a whole and not merely an asset used in it. This contention is without merit. The purpose of the exclusion provided in the Act is said to be a "recognition of the principle that gains or losses realized upon the sale, exchange, or other disposition of such property are business gains or losses and, as such directly affect the volume of business profits which should be subjected to tax in the years in which such transactions occur, "* * * This, in the great majority of cases, should be of benefit to the taxpayer since it will allow him to take losses against his ordinary income from the sale of such property. Under existing law, if a taxpayer loses on the sale of depreciable property, he cannot charge it off against ordinary income and can only receive a deduction if he has capital gains." Report of the Committee on Ways and Means on the Revenue Bill of 1938, dated March 1, 1938.

Under the Board's findings of fact, petitioner was engaged in the business of managing and renting property. He used in that business the present leasehold and when he disposed of it, presumptively he sold an asset used in his business.

Viewing the language of the statute in the light of its purpose, it is clear that petitioner disposed of a business asset. Richards v. Commissioner, 9 Cir., 81 F.2d 369, 106 A.L.R. 249.

The case of Commissioner v. Shapiro, 6 Cir., 125 F.2d 532, relied on by petitioner has no application. It is distinguishable on its facts.

Petitioner relying on the settled rule that no depreciation is allowable under Section 23($l$) unless the asset has a limited and terminable existence, urges that as the lease in question was renewable forever, its exhaustion is not susceptible to measurement. The concept of a lessening in value or exhaustion attributable entirely to the gradually diminishing life, measured in periods of time, has been applied in determining depreciation of leaseholds under all revenue acts and is specifically applicable under the present act as provided in Treasury Regulations 101, Art. 23(a)-10, and 103, Sec. 19.23(a)-10.

The renewal privileges under the terms of the present lease are qualified and may never be exercised. Under such circumstances, the life of the lease is measurable in time and is a depreciable asset within the purview of the statute. Bonwit Teller & Co. v. Commissioner, 2 Cir., 53 F.2d 381, 82 A.L.R. 325; 379 Madison Ave. v. Commissioner, 2 Cir., 60 F.2d 68; Helvering v. F. & R. Lazarus Co., 308 U.S. 252, 254, 60 S.Ct. 209, 84 L.Ed. 226.

The findings of the Board are supported by substantial evidence. Its order is affirmed.