WASHINGTON AMERICAN LEAGUE
BASE BALL CLUB, INC.,
Petitioner,

v.

DISTRICT OF COLUMBIA, Respondent.

No. 18992.

United States Court of Appeals
District of Columbia Circuit.

Argued April 2, 1965.

Decided June 15, 1965.

Mr. John E. Powell, Washington, D. C., with whom Messrs. Arthur P. Drury, John M. Lynham and Henry H. Paige, Washington, D. C., were on the brief, for petitioner.

Mr. Henry E. Wixon, Asst. Corp. Counsel for the District of Columbia, with whom Messrs. Chester H. Gray, Corp. Counsel, Milton D. Korman, Principal Asst. Corp. Counsel, and Peter H. Wolf, Asst. Corp. Counsel, were on the brief, for respondent.

Before BAZELON, Chief Judge, BASTIAN, Senior Circuit Judge, and McGOWAN, Circuit Judge.

McGOWAN, Circuit Judge.

This petition to review a decision of the District of Columbia Tax Court evokes a lingering echo of what was, from 1905 to 1960, one of the District's most distinctive institutions in its capacity to elevate and to depress, in swift alternation, the spirits of the community. It was the eventual ending, in the latter year, of this ambivalent and highly volatile relationship that gives rise to the issues before us.

In its Corporation Franchise Tax Return for 1960, petitioner deducted, as an ordinary expense incident to the conduct of its business, an item of $790,000, which it characterized as "Damages to American Association, Boston Red Sox, and Los Angeles Dodgers, Inc. resulting

from transfer to Minneapolis-St. Paul." It reported as income another item of $525,000, which it described as "Proceeds from sale of seven players to new teams in Los Angeles and Washington, D. C." When the assessing authorities challenged the former, petitioner objected to the resulting adjustment in tax liability, and also expressed the view that, if the expense deduction was to be disallowed, then the income item should be eliminated, since both were occasioned by the same series of events, i. e., the move of the Washington franchise to the Twin Cities and the creation of two new franchises. The assessing authorities remained unmoved by the asserted logic of this position, but they did, perhaps by way of a farewell salute to the glory that was 1924, allow a reduction of $300,000 in the income item on the theory that that sum, representing the aggregate purchase price for four of the players in question who had been with petitioner more than two years, was gain from the sale of capital assets and, as such, not taxable under the D. C. statute. In its answer to the review petition in the Tax Court, the District of Columbia unsentimentally disavowed this lenity on the part of its own people.[1] The Tax Court resolved all issues in favor of the District. We affirm its decision.

## I

The $790,000 deductible expense item in dispute arose in this way: At the close of the regular season in 1960, petitioner gave notice of its intent to acquire the territories of Minneapolis and St. Paul. Each of these cities had minor league teams, members of the American Association and owned, respectively, by the Boston Red Sox and the Los Angeles Dodgers. As a member of the American league, petitioner was bound by the Professional Baseball Rules, an adjunct of the Professional Baseball Agreement which in effect covers all major and minor league teams. One of such rules is designed to protect the minor league territories from major league intrusion, except upon the payment of compensation to be determined as provided in the rule. It was by reason of this rule that petitioner became obligated to pay $540,000 to the American Association, $100,000 to the Boston Red Sox, and $150,000 to the Los Angeles Dodgers; and these liabilities, totaling $790,000, were accrued on petitioner's books as of December 31, 1960.

There is apparently no issue raised as to the propriety of the allocation of this expense to the year 1960 if it is deductible as such at all. But to be deductible for this reason it must be fitted into the statutory category of "ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business * * *." And, in the case of corporations such as is petitioner, such expenses must be "connected with income arising from sources within the District * * *." 47 D.C.Code § 1557b. The Tax Court did not see how, in the first instance, the item could be regarded as related to business carried on in the District of Columbia, since it was an expenditure directed towards the acquisition of a right to move petitioner's business out of the District. In any event, the Tax Court looked upon the expenditure as a capital investment—and so do we.

It is true that petitioner technically did not acquire a new franchise but only moved its old one from Washington to the Twin Cities. See Murphy v. Washington American League Base Ball Club,

---

[1.] It is not claimed that the Tax Court was foreclosed from considering the District's claim in its answer for an additional assessment, contrary to the allowance made by the assessing authorities. No facts were stipulated in this regard which were binding on the Tax Court (compare Verkouteren v. District of Columbia, May 11, 1965, 120 U.S.App.D.C. ——, 346 F.2d 842; Alper v. District of Columbia, May 11, 1965, 120 U.S.App.D.C. ——, 346 F.2d 845); and there was no closing agreement within the meaning of 47 D.C.Code § 1586k. Petitioner does assert that, by virtue of Rule 22 of the Tax Court's Rules, the District had the burden of proof in respect of the additional assessment, and that that burden was not met.

Inc., 110 U.S.App.D.C. 334, 293 F.2d 522 (1961). But what petitioner sought and obtained—and what it was willing to pay a substantial sum of money for—was a new and different right to do business in a new place. To get that right, it had to ask for and obtain the consent of the other American League franchise owners, and it had to make the territorial payments required by the Professional Baseball Rules. These payments are obviously a part of its investment in its new right to be the major league team in Minneapolis-St. Paul. That investment would appear, under familiar accounting principles, to be amortizable over the life of that right. We do not think its essential nature may be disregarded because of the circumstance that 1960 is presumably the last year that petitioner is subject, at least to any significant degree, to franchise taxation in the District of Columbia.[2]

## II

■ At the same time that the American League owners agreed to let petitioner move to the Twin Cities, they decided to authorize new franchises for Washington and Los Angeles, respectively. In order to provide the two new teams with players of major league caliber, each existing owner agreed to sell seven players, at $75,000 each, to the new clubs. Petitioner honored this obligation and received a total of $525,000. Although petitioner initially reported this as income in its return, it later urged that this should be excluded from income if the $790,000 is not to be treated as a deductible expense. The argument is that, since petitioner would not have had to sell these players if it had not moved to Minnesota, the $525,000 should either be treated as an offsetting item to the $790,000, or as income not attributable to business done in the District.

But other owners in the American League who moved nowhere had to sell players to the new teams, and thus this obligation was not unique to petitioner. Moreover, petitioner's ability to make the sales rested upon and grew out of the business it had been doing in the District. We do not, therefore, think that these sales were so peculiar to petitioner or to its Minnesota move that they were not to be reported in the customary fashion for D. C. franchise taxation. And neither did petitioner until it failed to convert its capital investment in its Minnesota franchise into an ordinary business expense of its last year of District operations.

■ We turn finally to the concession by the assessing authorities of the non-taxability of the $300,000 realized from the sale of four players who had been with petitioner more than two years. One ground of the Tax Court's rejection of this concession was founded upon the statute's express exclusion from capital assets of "property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business." 47 D.C.Code § 1551c(*l*). In this the Court purported to follow Hollywood Baseball Ass'n, P-H Tax Ct. Rep. & Mem. Dec. ¶ 42.13 (Apr. 21, 1964). But this case involved a minor league team and, although on some occasions and for some purposes petitioner might have been hard pressed to draw a line in this regard clearly visible to a sensitive observer, it remains true that there are very real differences between the major and minor leagues in the degree to which trading in players is conceived of as a primary function.

In any event, we need not weigh the Tax Court's determination solely by reference to this standard, for it also rested heavily upon petitioner's own established practice of not treating players' contracts as capital assets. In evidence were petitioner's returns for the five years immediately preceding 1960; and, in each, petitioner in effect treated the net figure between players purchased and players sold during the year as either

---

2. The stipulation of facts in the Tax Court recites that petitioner's "office furniture, files and equipment were moved from the District of Columbia to Minneapolis, Minnesota, in January, 1961 * * *."

income or deductible expense, as the case might be. This practice undoubtedly reflected the fact that, for federal income tax purposes, the standard one-year contract, with its option in the owner to renew but with full freedom in the player not to play at all, has not been thought to be a capital asset. Commissioner v. Pittsburgh Athletic Co., 72 F.2d 883 (3d Cir. 1934); Commissioner v. Chicago National League Ball Club, 74 F.2d 1010 (7th Cir. 1935); Helvering v. Kansas City American Ass'n Baseball Co., 75 F.2d 600 (8th Cir. 1935). And see Bonwit Teller & Co. v. Commissioner, 53 F.2d 381, 82 A.L.R. 325 (2d Cir. 1931), cert. denied, 284 U.S. 690, 52 S. Ct. 266, 76 L.Ed. 582 (1932).[3] Thus it is that petitioner presumably has deducted from taxable income in some prior year or years the initial cost to it of the contracts of the four players in question. It is hardly in a position now to insist that comparable treatment not be given the revenues realized from their sale.

Affirmed.

Burger, Circuit Judge, dissented.

---

3. Petitioner's sole reliance for authority to the contrary is District of Columbia v. General Teleradio, Inc., 97 U.S.App.D.C. 280, 230 F.2d 830 (1956). Our opinion in that case addressed itself only to the issue of the measurement of the holding period of a radio and television license granted by the Federal Communications Commission, and not to the question of whether such license was or was not to be regarded as a capital asset for purposes of the D. C. Franchise Tax Act. That question was not put in issue by the parties.