## 719 FIFTH AVENUE CO. v. UNITED STATES.
### No. J–291.

Court of Claims.
Feb. 5, 1934.

an agreed rental of $45,000 a year from July 1, 1912, when ground rental commenced, to July 1, 1921, and $50,000 a year for the balance of the original term, with an option to renew the same on certain conditions. Under the terms of the lease, the plaintiff was required to construct a building thereon, and erected a twelve-story apartment and store building upon the demised premises. After the erection of the building, the plaintiff leased the entire building, with the exception of three stores on Fifth avenue, at a net rental of $50,000 a year, the lessee to pay the entire expense of maintaining the building, exclusive of ground rent, for the period commencing October 1, 1912, to June 30, 1932.

When the plaintiff filed its income and excess profits tax returns for the years 1920 and 1921, it deducted from the gross income reported depreciation on the building at 5 per cent. per annum on the cost thereof, and also deducted for exhaustion or amortization of the value of its leasehold at the rate of 5 per cent. per annum. The Commissioner of Internal Revenue, however, only made an allowance of 2 per cent. for depreciation on the cost of the building, and disallowed any deduction for exhaustion or amortization of the value of the leasehold interest. The plaintiff appealed to the Board of Tax Appeals, and the Board held that plaintiff was entitled to 3 per cent. per annum as a deduction for depreciation on the cost of the building, but was not entitled to any amount by reason of exhaustion or depletion of the leasehold interest. In accordance with the order of the Board, the Commissioner subsequently assessed a deficiency for the year 1920 in the amount of $2,181.10 and for the year 1921 in the amount of $8,127.91, which the plaintiff paid, and then filed a claim for refund thereof on the ground that the Commissioner should have made the allowances set forth in its original return. This claim for refund was rejected, and the issue in the case arises on its rejection.

The case is presented as one which turns upon the amount of depreciation of the building erected upon the leased premises, and also upon whether there should be any allowance for exhaustion or amortization of the value of the leasehold interest in determining the amount of plaintiff's taxable income.

We do not think that the situation is the same as it would be if plaintiff had owned the building. The fact is that the plaintiff acquired no title thereto, but simply a leasehold interest. As we view it, the case is simply one in which the plaintiff acquired a

Frank S. Bright, of Washington, D. C. (H. Stanley Hinrichs, of Washington, D. C., on the brief), for plaintiff.

Francis T. Donahoe, of Washington, D. C., and Frank J. Wideman, Asst. Atty. Gen. (James A. Cosgrove, of Washington, D. C., on the brief), for the United States.

Before BOOTH, Chief Justice, and GREEN, LITTLETON, WILLIAMS, and WHALEY, Judges.

GREEN, Judge.

The plaintiff brings this suit to recover $12,827.55, with interest thereon, alleged to have been overpaid on its income taxes for the years 1920 and 1921, and for which amount the plaintiff duly filed a claim for refund.

It appears that the plaintiff leased the premises known as 719 Fifth avenue, New York City, for 21 years from July 1, 1911, at

lease under terms which required it to make a large investment in a building to be constructed on the leased premises. At the expiration of the lease, the evidence showed that the renewal privilege had no value, and, if the lease was not renewed, the building became the property of the lessor. The money which plaintiff had put into the building was a capital investment, and the plaintiff had nothing to show for it when the lease expired. In our opinion, the deduction must be made from plaintiff's gross income in the same manner as it would be in any other case of a capital investment which dwindled in value each year until it was worth nothing. The building cost $438,921.19, and, as before stated, was ready for occupancy and leased for the period from October 1, 1912, to June 30, 1932. We think that the loss of the amount so invested should be apportioned over the rental period and a deduction made from the gross income of plaintiff for each year accordingly. In making this holding, we differ from the decision of the Board of Tax Appeals when this case was before it. At that time the Board seems to have held that in cases involving leases for a period of years, with the option to renew for an additional period, the cost of such leases should be written off over the original period plus the renewal period. Subsequently, in another case (Bonwit Teller & Co. v. Com'r, 17 B. T. A. 1019, 1026), the Board applied this rule, but the decision was reversed in the Circuit Court of Appeals. Bonwit Teller & Co. v. Commissioner, 53 F.(2d) 381, 82 A. L. R. 325, certiorari denied 284 U. S. 690, 52 S. Ct. 266, 76 L. Ed. 582. In the case before us, the fact that the renewal privilege was worthless makes it clear that the loss was complete when the lease ended and that the renewal period should not be considered.

As before stated, the plaintiff claims to be entitled to an allowance for exhaustion or amortization of the leasehold value. The defendant, on the contrary, contends that the leasehold had no value. The Commissioner found that the value of the leasehold interest on March 1, 1913, exclusive of the value of the improvements thereon, was $110,799 and the testimony of expert witnesses presented by plaintiff, if accepted, would show the value to be much larger at that date. The sole witness presented by defendant on this subject testified that the leasehold interest had no value when it was acquired. The testimony of plaintiff's witnesses was given in response to hypothetical questions, which unfortunately were not based entirely on facts supported by testimony, but, on the contrary, in some respects were inconsistent with the undisputed facts in the case which renders their statements of little or no value. On the other hand, the amount fixed as the rental value between plaintiff and the lessor is strong evidence of its actual value, and by some authorities considered the best evidence. The evidence shows definitely that there was no rise but, if anything, a depreciation in rental values between the time the original lease was executed and March 1, 1913. The amount subsequently received by the plaintiff for rentals and its net income from the premises are not admissible as evidence of the value of its leasehold interest on March 1, 1913. The plaintiff was taking some risk when it executed the lease and naturally expected, if matters went well, to receive a profit. No one would otherwise lease the premises and agree to put up an expensive building. Nor do we think that the building added anything to the value of the leasehold over and above the expense of its erection. We conclude that the leasehold had no value March 1, 1913, which could be made the subject of exhaustion or amortization when considered apart from the building which had to be constructed at plaintiff's expense and on the termination of the lease became the property of the lessor.

It follows from what we have said above that we have only to consider the amount of the annual deduction to which plaintiff was entitled on account of the loss of its investment in the building. The only evidence that we have as to the time these expenditures were made is that the building was completed, ready for occupancy, and was leased from October 1, 1912, to June 30, 1932, a few months less than 20 years. We think it would be sufficiently accurate to allow the plaintiff to write off from its investment 5 per cent. each year, and that this amount should be allowed for 1920 and 1921, the years involved in this suit.

The plaintiff is entitled to recover, but the entry of judgment will be suspended pending a submission by the parties of a computation of the tax liability consistent with this opinion.