**MEADER et al. v. UNITED STATES.**

No. 42884.

Court of Claims.

April 3, 1939.

Maurice Kay, of Washington, D. C., for plaintiffs.

John W. Hussey, of Washington, D. C., and James W. Morris, Asst. Atty. Gen. (Robert N. Anderson and Fred K. Dyar, both of Washington, D. C., on the brief), for the United States.

Before BOOTH, Chief Justice, and GREEN, LITTLETON, WILLIAMS, and WHALEY, Judges.

WHALEY, Judge.

The plaintiffs bring this suit to recover the estate tax paid on leaseholds which are claimed to have been over-valued by the Commissioner of Internal Revenue.

The real question involved is whether the evidence submitted by the plaintiffs overcomes by its preponderance the valuation determined by the Commissioner of Internal Revenue on these leaseholds.

The facts have been found with minute detail and with full particularity. It is only necessary for a full understanding of the situation to state that Herman Lee Meader was the owner of the stock of a personal holding company and died on February 14, 1930, leaving these shares as a part of his estate. Among the assets of one of the corporations whose stock was held by the holding company were two leases on the Waldorf building situated on 33rd Street in the city of New York. At the date of his death the leases had run for approximately 16 years of the 20-year period but there was a provision in the leases for a renewal at the expiration of the first period for an extended period of 20 years and for two other renewals of a like number of years. Of the total cost of this building, the corporation had contributed $550,000 in cash and had issued bonds at 6% for $150,000. When the testator died the money contributed by the corporation in cash had been returned to the extent of some $400,000 by yearly amortization. Besides this amount a salary of $20,000 a year was charged for Meader's services and interest on the bonds paid and all other expenses of maintaining the building as a rental property.

After his death, his executors, plaintiffs in this case, employed an expert real estate firm to make an appraisal of these leases and in May, 1930, a report was made by this appraiser valuing the leases at $775,000. In arriving at this valuation, the unexpired period of the first term and the first renewal period of 20 years were taken into consideration. In making that valuation the appraiser used average annual earnings from the leaseholds for the years prior to the decedent's death of $61,000, which was conservative since the net earnings set out in our findings take into consideration a deduction of $26,000 annually for the amortization of the cost of the leaseholds which of course should be added to the net earnings shown. It should be observed further that the net income for 1930 was $59,994.13, which, when increased by the amortization deduction of $26,000, would show net income for that year, which was the year of decedent's death, of approximately $86,000. The plaintiffs used this appraisal in making a return to the State of New York for inheritance tax purposes and furnished it to the Commissioner of Internal Revenue for Federal estate tax purposes.

The Commissioner of Internal Revenue had an expert to make a detailed examination of the value of these leaseholds as submitted by plaintiffs and he approved plaintiffs' valuation. The New York State inheritance tax was paid and taken as a deduction against the Federal estate tax and the plaintiffs paid a Federal estate tax of $10,222.60. These events occurred shortly after the basic date on which the valuation is required to be fixed, that is, February 14, 1930, the date of the death of the decedent.

It was not until August 30, 1932, that plaintiffs filed a claim for refund on the ground that the assessment made on the basis of the appraiser's valuation was erroneous, claiming that the appraiser should not have taken into consideration the first renewal period of 20 years. After due consideration the Commissioner disallowed the claim.

This case was tried in 1936 and both the appraiser for the estate and the appraiser for the Commissioner of Internal Revenue testified that the values placed on these leases were the true market values at the time of the death of the testator. One of the plaintiffs herein is a real-estate dealer in the City of New York, well acquainted with values of property, and he accepted the appraisal made by the appraiser for the estate, furnished it to the State of New York for inheritance tax purposes and also to the Commissioner of Internal Revenue for the purpose of establishing a value on these leaseholds.

The evidence discloses that the highest rentals and the largest net revenue were received during the year 1930 and that the real-estate market did not begin to decline because of the depression until about 1931. The proof shows that the testimony of the plaintiffs' witnesses was affected by what happened in the years following 1930 when the world-wide depression caused real-estate values to shrink abnormally.

In our opinion, the preponderant weight of the evidence is in favor of the Commissioner of Internal Revenue in the valuation placed by him upon the leases in making his determination.

There remains only the question of whether the plaintiffs' appraiser was justified in taking into consideration, in arriving at the value of these leaseholds, the renewal period of 20 years, or was he confined solely to the value of the leases for the remaining years of the first period.

The plaintiffs have cited many cases but we do not think these cases sustain their position. None of them is apposite.

In Bonwit Teller & Co. v. Commissioner of Internal Revenue, 2 Cir., 53 F.2d 381, 383, 82 A.L.R. 325, it was held that in allowing deductions on account of amortizing the cost of a leasehold, the cost should be amortized over the original term of the lease but the court also held:

"Despite the uncertainty of the rental to be paid during the extension, the option may give additional value to the lease, just as many other types of provisions might give the lease value."

The history of the rental values of this property shows that at the time of the death of the testator, if continued at their present rate, they would have amortized the $550,000 contributed by Meader by the end of the original term. With the recovery of this sum the renewal period would have an additional value over that of the original term. It actually shows that the leaseholds were valuable and paying propositions and the renewal period was a valuable asset to the estate which could have been disposed of in the active real-estate market which existed at that time.

Plaintiffs' whole case is based on what occurred after 1930 in the declining real-estate market but we are concerned only with the value of the leaseholds as of the 14th of February, 1930. What occurred afterwards sheds no light on what was the real value on the day of the death of the testator and the evidence clearly shows that, judging the future by the past, the renewal period of these leaseholds would be very valuable to the estate. In Ithaca Trust Company v. United States, 279 U.S. 151, 155, 49 S.Ct. 291, 292, 73 L.Ed. 647, the court said: " * * * Therefore the value of the thing to be taxed must be estimated as of the time when the act is done. But the value of property at a given time depends upon the relative intensity of the social desire for it at that time, expressed in the money that it would bring in the market. See International Harvester Co. v. Kentucky, 234 U.S. 216, 222, 34 S.Ct. 853, 58 L.Ed. 1284. Like all values, as the word is used by the law, it depends largely on more or less certain prophecies of the future, and the value is no less real at that time if later the prophecy turns out false than when it comes out true. See Lewellyn v. Electric Reduction Co., 275 U.S. 243, 247, 48 S.Ct. 63, 72 L.Ed. 262; City of New York v. Sage, 239 U.S. 57, 61, 36 S.Ct. 25, 60 L.Ed. 143. Tempting as it is to correct uncertain probabilities by the now certain fact, we are of opinion that it cannot be done, * * *."

See also 719 Fifth Avenue v. United States, 5 F.Supp. 909, 912, 78 Ct.Cl. 707, 713, in which it was held: " * * * The amount subsequently received by the plaintiff for rentals and its net income from the premises are not admissible as evidence of the value of its leasehold interest on March 1, 1913. The plaintiff was taking some risk when it executed the lease and naturally expected, if matters went well, to receive a profit. No one would otherwise lease the premises and agree to put up an expensive building."

In our opinion the Commissioner was correct in arriving at his determination of the values of the leaseholds on the date of the death of the testator.

The petition is dismissed. It is so ordered.