**UNION ELECTRIC CO. OF MISSOURI v. COMMISSIONER OF INTERNAL REVENUE.**

**COMMISSIONER OF INTERNAL REVENUE v. UNION ELECTRIC CO. OF MISSOURI.**

Nos. 13949, 13944.

United States Court of Appeals
Eighth Circuit.
Oct. 25, 1949.

270

Robert J. Keefe, St. Louis, Mo.. (Walter S. Alt, John A. Woodbridge, Igoe, Carroll, Keefe & Coburn, St. Louis, Mo., Norris Darrell, John F. Dooling, Jr., Hubert J. DeLynn, and Sullivan & Cromwell, New York City, on the brief), for Union Electric Co. of Missouri.

Harry Marselli, Special Assistant to Attorney General (Theron Lamar Caudle, Assistant Attorney General, and Ellis N. Slack, A. F. Prescott, and Maryhelen Wigle, Special Assistants to Attorney General, on the brief), for Commissioner of Internal Revenue.

Before GARDNER, Chief Judge, and WOODROUGH and THOMAS, Circuit Judges.

THOMAS, Circuit Judge.

This case is here upon cross petitions of the Union Electric Company of Missouri, a taxpayer, and the Commissioner of Internal Revenue to review a decision of The Tax Court of the United States, 10 T. C. 802, determining deficiencies in the taxpayer's federal income taxes as follows, for

| | |
|---|---|
| 1939 | $192,940.85 |
| 1940 | 208,424.77 |
| 1941 | 33,508.22 |
| 1942 | 223,649.99 |

The ultimate facts found by the Tax Court or stipulated by the parties are not in dispute.

During the taxable years the Union Electric Company owned and operated an hydroelectric plant on the Osage river, near Bagnell, Missouri. The plant consists of a dam or reservoir, which inundates about 65,000 acres of land, and hydroelectric equipment for the generation and transmission of electricity.

The Osage river at the location of the plant is a navigable stream over which the federal government has control. The plant was constructed under a license from the Federal Power Commission pursuant to authority contained in the Federal Power Act of June 10, 1920, as amended. c. 285, 41 Stat. 1063, 16 U.S.C.A. § 791a et seq. The license is for a term of 50 years, expiring February 25, 1976. The plant was completed and put into commercial operation in 1931.

The controversy relates to the proper annual deductions from gross income for exhaustion and depreciation to which the taxpayer is entitled for the taxable years to recover its costs.

Except for the end abutments, the dam is built across, and rests upon the bed of, the Osage river. This land is not owned by the taxpayer. It acquired other land in fee simple, the cost of which is not involved in this controversy. The various costs to the taxpayer involved here are:

Dam— ................... $10,353,287.40
Structures and improvements
  as of 1/1/39— ........... 1,023,506.27
Land and flowage rights— .. 10,665,040.24
Easements for transmission
  lines to St. Louis— ...... 492,157.21

The cost of land rights and flowage rights referred to includes the cost of replacing inundated highways, bridges and roads; damages to buildings, improvements and other property razed or destroyed in the construction of the reservoir; the expenses of moving bodies from cemeteries; the cost of rights and easements to flood property; the cost of condemnation for flowage rights which revert to the original owners upon non-use for the purpose for which condemned; and the cost of land acquired in fee simple with easements reserved by the grantors to use the surface for any purpose not interfering with the taxpayer's business.

Some of the easements giving the taxpayer the right to flood property were for the 50-year period of the license. Others continued for the duration of the dam or any other dam at or near the same site.

The rights, easements and estates in lands involved have no value except as they are used in connection with the power plant.

It may reasonably be anticipated that the reservoir will contain a considerable amount of silt at the end of 100 years, and silt deposits in the reservoir will probably determine the economic life of the location for an hydroelectric power plant.

The taxpayer, in its income tax returns for the taxable years, claimed deductions under § 23(l) of the Internal Revenue Code, 26 U.S.C.A. § 23(l), calculated to depreciate the cost of the dam, structures and improvements, land and flowage rights, and easements over the 50-year term of the federal license expiring in 1976. The Commissioner, in determining deficiencies, reduced the depreciation on the cost of the dam to an amount based upon a useful life of 100 years; on the cost of structures and improvements to an amount based on a useful life of 60 years; and he disallowed all deductions claimed for exhaustion of the land and flowage rights and easements.

Upon petition of the taxpayer to the Tax Court to redetermine the deficiencies fixed by the Commissioner that Court sustained the determination of the Commissioner on the first two points, that is, the Court determined that the deductions for depreciation on the cost of the dam should be based on a useful life of 100 years and on the cost of structures and improvements on a useful life of 60 years. The Court rejected the Commissioner's action in disallowing all deductions claimed for exhaustion of the cost of land and flowage rights and easements, and held that these costs should be depreciated over a period of 100 years.

In its petition here the taxpayer contends that the Court erred in failing to determine that the cost of the entire project, including the cost of the dam, the cost of the structures and improvements, and the cost of the land and flowage rights should be depreciated over the 50-year term of the license.

The Commissioner in his petition contends that the Court erred in holding that the taxpayer is entitled to deduct for depreciation the cost of "land and flowage rights" and for "easements for transmission lines to St. Louis" over the 100-year useful life of the dam.

The applicable provisions of the Internal Revenue Code, 26 U.S.C.A. § 23, read:

"§ 23. Deductions from gross income.

"In computing net income there shall be allowed as deductions: * * *

"l. A reasonable allowance for the exhaustion, wear and tear (including a reasonable allowance for obsolescence)—

"(1) of property used in the trade or business, or

"(2) of property held for the production of income."

The problem presented here results from the facts that federal income taxes are levied and collected annually and the taxpayer operates under a license from the Federal Power Commission limited to 50 years with conditions, hereinafter referred to, controlling the disposal of, or the future use of the plant. In cases in which the taxpayer is the owner in fee simple of property held for the production of income a deduction for depreciation or exhaustion based upon the useful life of the property is allowable under the statute. The revenue laws, however, give no express directions for determining the annual allowance for exhaustion and depreciation of property used and useful by a licensee under the Federal Power Act other than that such allowance shall be "reasonable." The parties agree that the situation is analogous to, but not identical with, a leasehold or other contract for the use of real estate or other property for a definite period with a right of renewal upon expiration of the term where the tenant places improvements upon the leased property having a useful life extending beyond the term of the lease.

Although the license is analogous in some respects to a leasehold it is not in fact a lease of property rights for the use of which rental is paid. No rentals as such are charged to or paid by the taxpayer for the privilege of constructing its dam in the Osage river.

In order, therefore, to understand and consider the contentions of the parties we note the conditions of the license involved and the Treasury Regulations applicable to leaseholds.

Section 6 of the Federal Power Act, 16 U.S.C.A. § 799, supra, provides "That licenses under this Act shall be issued for a period not exceeding fifty years. Each such license shall be conditioned upon acceptance by the licensee of all of the terms and conditions of this Act. * * *"

"Section 14. * * * the United States shall have the right upon or after the exporation of any license to take over * * * any project * * * covered * * * by the license * * * or * * * all property owned and held by the licensee * * * upon the condition that before taking possession it shall pay the net investment of the licensee in the project * * * taken, not to exceed the fair value of the property taken, plus such reasonable damages, if any * * *." 16 U.S.C.A. § 807.

Section 15 provides that if the United States does not exercise its right to take over the project then the Federal Power Commission is authorized to issue a new license to the original licensee "upon such terms and conditions as may be authorized or required under the then existing laws and regulations, or to issue a new license * * * on the condition that the new licensee shall, before taking possession of such project * * *, pay such amount * * * as the United States is required to do in the manner specified in section 14 hereof: * * *

"Provided, that in the event the United States does not exercise the right to take over or does not issue a license to a new licensee, or issue a new license to the original licensee, upon reasonable terms, then

the commission shall issue from year to year an annual license to the then licensee under the terms and conditions of the original license until the property is taken over or a new license is issued as aforesaid." 16 U.S.C.A. § 808.

The relevant parts of Section 19.23(a)-10 of Treasury Regulations 103 and of Section 29.23(a)-10 of Treasury Regulations 111 applicable to the taxable years are the same, and they read:

"* * * The cost borne by a lessee in erecting buildings or making permanent improvements on ground of which he is lessee is held to be a capital investment and not deductible as a business expense. In order to return to such taxpayer his investment of capital, an annual deduction may be taken from gross income of an amount equal to the total cost of such improvements divided by the number of years remaining of the term of lease, and such deduction shall be in lieu of a deduction for depreciation. If the remainder of the term of lease is greater than the probable life of the buildings erected, or of the improvements made, this deduction shall take the form of an allowance for depreciation.

"In cases in which the lease contains an unexercised option of renewal, the matter of spreading such depreciation or amortization over the term of the original lease, together with the renewal period or periods, depends upon the facts in the particular case. As a general rule, unless the lease has been renewed or the facts show with reasonable certainty that the lease will be renewed, the cost or other basis of the lease or the cost of improvements shall be spread only over the number of years the lease has to run, without taking into account any right of renewal."

The Tax Court found that no inference arises from the evidence that the plant and equipment will not be valuable or serviceable at the end of the 50-year license; and the Court concluded that "It must be assumed for the purpose of this case that at the end of the present license the petitioner will be allowed to continue operations under a new license of some kind or will be compensated at that time by a successor for the unexhausted cost of the assets in question. The petitioner has not shown any reasonable probability that its assets will have no value to it at the end of the 50-year term of the existing license and it has not shown error in the Commissioner's use of the longer period of probable useful lives of those assets."

The taxpayer contends that the Court erred in so finding and holding as a matter of law, in that the Regulations, supra, provide that "As a general rule, unless the lease has been renewed or the facts show with *reasonable certainty* that the lease will be renewed, * * * the cost of improvements shall be spread only over the number of years the lease has to run, without taking into account any right of renewal." (Italics supplied.) And the taxpayer argues that whether the license be renewed or the government takes the plant over by paying the taxpayer its reasonable value is conjectural only and not reasonably certain.

■ At this point the parties do not agree as to which party has the burden of proof. Section 23 of the Internal Revenue Code, supra, grants to the taxpayer "A reasonable allowance for the exhaustion, wear and tear * * * of property held for the production of income." Sections 19.23(1)-5 and 29.23(1)-5 of Treasury Regulations 103 and 111 both provide that "The capital sum to be recovered shall be charged off over the useful life of the property. * * * The reasonableness of any claim for depreciation shall be determined upon the conditions known to exist at the end of the period for which the return is made. * * * The burden of proof will rest upon the taxpayer to sustain the deduction claimed." The taxpayer contends that this rule does not apply to a limited license or lease, but only to property held in fee simple; that the burden in this case rests upon the Commissioner because the license is limited to 50 years and that 50 years is the limit of the useful life of the plant for the taxpayer unless the Commissioner shows "with reasonable certainty that the lease will be renewed." We think the burden of proof to sustain its claimed deduction under the law is upon the taxpayer; and that the question for consideration is whether the

taxpayer has sustained that burden. The Tax Court held that it had not done so. Nevertheless the situation disclosed by the record must be considered to determine that question. Lamson Bldg. Co. v. Commissioner, 6 Cir., 141 F.2d 408; Bonwit Teller & Co. v. Commissioner, 2 Cir., 53 F.2d 381, 82 A.L.R. 325, certiorari denied Bonwit Teller & Co. v. Burnet, 284 U.S. 690, 52 S.Ct. 266, 76 L.Ed. 582; Gloyd v. Commissioner, 8 Cir., 63 F.2d 649.

Neither party introduced any evidence showing the value of the hydroelectric plant at the end of the 50-year term of the license on the basis of a renewal of the license. Witnesses for the taxpayer testified that the plant would have no value without a license. And the Tax Court found that "The value of the rights, easements and estates in lands involved herein had no value except as they were used in connection with the power plant." The Court further found, without exception by either party, that the useful life of the plant with a license is 100 years.

■ The question, therefore, for consideration is the reasonableness of the taxpayer's claim for deductions for exhaustion and depreciation "determined upon the conditions known to exist at the end of the period for which the return(s) were made" in 1939, 1940, 1941, and 1942. Upon this question the taxpayer had the burden of proof, which means, of course, that the decision of the Commissioner is prima facie evidence of its correctness. Wickwire v. Reinecke, 275 U.S. 101, 105, 48 S.Ct. 43, 72 L.Ed. 184; Southeastern Building Corporation v. Commissioner, 5th Cir., 148 F.2d 879, certiorari denied 326 U.S. 740, 66 S.Ct. 52, 90 L.Ed. 442. The only relevant evidence upon this point consists of the costs of the investment, the date of the construction of the plant and when it was put in operation in 1931, and the statutory conditions, supra, required to be set out in the license.

■ In final analysis, therefore, the question is whether there is a reasonable basis in those conditions for the inference drawn therefrom by the Commissioner and supported by the findings and conclusions of the Tax Court. Such inference is not overcome by the conjectures of the taxpayer in reference to the situation which may possibly exist in 1976; that the progress of science may have rendered the process of producing electricity in hydroelectric plants obsolete; that it may then be more economical to produce electricity by the use of coal or atomic energy and that the taxpayer may elect not to renew its license at that time or to accept any of the statutory conditions available to it. However, in light of conditions in the forseeable future, it may be presumed that the taxpayer will not voluntarily abandon a valuable property when the government or some other party is willing and able to take it over and pay for its reasonable worth, or when it may operate its plant at a profit. This is not to say that some of the taxpayer's conjectures may not occur. We mean only that the taxpayer has not sustained its burden of proof by any reasonable evidence. Burnet v. Houston, 283 U.S. 223, 228, 51 S.Ct. 413, 75 L.Ed. 991; Stock Yards National Bank v. Commissioner, 8 Cir., 153 F.2d 708, 710; Mahler v. Commissioner, 2 Cir., 119 F.2d 869.

The taxpayer criticises the statement in the opinion of the Tax Court in this case that "The petitioner has not shown any reasonable probability that its assets will have no value to it at the end of the 50-year term of the existing license and it has not shown error in the Commissioner's use of the longer period of probable useful lives of those assets." It complains that this is an erroneous test; that the proper test is a "reasonable certainty." If the criticism is correct it is without prejudice to the taxpayer. The test of "reasonable probability" does not impose a greater burden upon the taxpayer than would the test of "reasonable certainty."

In the view we have taken of the case it is unnecessary to discuss other contentions of the taxpayer. It is our opinion that the Tax Court is correct in holding that the taxpayer should and must spread its deductions from income for exhaustion and depreciation of the costs of its investment over the useful life of its dam of 100 years, and of its structures and improvements of 60 years.

There remains for consideration the contention of the Commissioner that the taxpayer is not entitled to recover annual deductions during the useful life of the dam based on amounts paid for land and flowage rights and easements for transmission lines. The taxpayer is not claiming the right to recover costs of land title to which was taken in fee simple. Such costs it is conceded are not so recoverable. The cost of land and flowage rights involved refers to expenditures for highways, bridges and damages to property inundated, condemnation for flowage rights over inundated land which revert to the original owner on non-use; costs of buildings and improvements to town property which were razed or destroyed; moving bodies from cemeteries, and the like. Easements for transmission lines include lines leading from the plant to the city of St. Louis. These lands and flowage rights and easements have no value except as they are used in connection with the power plant. It follows logically, it seems to us, that their useful life must diminish and end with the useful life of the plant itself. The Tax Court held that all these expenditures represent costs of the complete power plant and that a reasonable allowance for their exhaustion, wear and tear, during each of the taxable years is 1/100 of their total costs.

The Commissioner concedes that "If the land rights are incident to legally depreciable property, and if the taxpayer can demonstrate that such rights will no longer be useful in a determinable period, their cost will be taken into consideration when the matter of depreciation comes to hand."

The applicable rule is stated in Section 19.23(1)-3 of Treasury Regulations 103 as follows: "Intangibles, the use of which in the trade or business is definitely limited in duration, may be the subject of a depreciation allowance. Examples are * * * licenses, and franchises." Here the useful life of these intangible rights is definitely connected with the useful life of the dam, which is found to be 100 years.

But the Commissioner argues that in the event another dam should be constructed at the same place in the Osage river after the present dam has become useless these rights here involved would not be exhausted and they would never require replacement. In such case the taxpayer would not have to pay anew for highways submerged, for buildings razed nor for moving bodies from cemeteries. In this the Commissioner does not take into account the principle that the right to deductions for depreciation does not depend upon mere possibilities. Commissioner v. Philadelphia Coke Co., 3 Cir., 130 F.2d 87, certiorari denied 317 U.S. 685, 63 S.Ct. 259, 87 L.Ed. 549. It may be that after 100 years another dam will replace the present one but it is also possible that the reservoir will at that time be filled with silt rendering the construction of a new dam useless. The finding of the Tax Court that all these rights are inseparably linked with the useful life of the present dam and that their costs are and should be considered as a part of the depreciable costs of the plant is a reasonable conclusion based upon conceded or established facts. Under these circumstances this court should not reverse the Tax Court on this point.

The decision of the Tax Court is affirmed on the petitions to review both of the taxpayer and of the Commissioner.