277 F.2d 128
 NORTHERN NATURAL GAS COMPANY, Appellant,
v.
John A. O'MALLEY, Administrator of the Estate of George W. O'Malley, deceased, Appellee.
NORTHERN NATURAL GAS COMPANY, Appellant,
v.
James L. McCRORY, Appellee.
 No. 16238.
 No. 16239.
 United States Court of Appeals Eighth Circuit.
 April 13, 1960.
 
 James W. R. Brown, Omaha, Neb., made oral argument for appellant.
 John J. Pajak, Attorney, Tax Division, Dept. of Justice, Washington, D. C., made argument for the appellees.
 Before JOHNSEN, Chief Judge, and VAN OOSTERHOUT and BLACKMUN, Circuit Judges.
 VAN OOSTERHOUT, Circuit Judge.
 
 
 1
 These actions, consolidated for trial and upon appeal, are for the recovery of federal income taxes alleged to have been illegally assessed and collected for the years 1946 through 1951. Timely refund claims were filed and disallowed. These suits were commenced within the time permitted by law. The defendant in each action is the collector of internal revenue in office at the time the tax was paid. The collectors represented the Commissioner and acted under his direction. For convenience and simplicity, we will hereafter refer to the Commissioner as the defendant.
 
 
 2
 This court has jurisdiction to consider these appeals. 28 U.S.C.A. § 1291.
 
 
 3
 The trial court's memorandum opinion, reported at 174 F.Supp. 176, contains quite a complete statement of the pertinent facts. A full discussion of the complicated facts would unduly extend this opinion. We will discuss the essential facts during the course of this opinion.
 
 
 4
 The basic issue presented by these appeals is whether the taxpayer has established a right to a depreciation deduction based upon exhaustion of its right-of-way easements for its pipe lines used to transmit gas for considerable distances.
 
 
 5
 Plaintiff was incorporated in 1930 and since that time has been engaged in the business of acquiring natural gas from fields in Texas, Oklahoma and Kansas, and transporting it for sale by means of its pipe lines to customers in Nebraska, South Dakota, Iowa and Minnesota. Its operations are regulated and licensed by the Federal Power Commission.
 
 
 6
 Plaintiff's pipe lines were constructed over lands owned by others pursuant to easements granted plaintiff, which provide that the easements shall continue "so long as such pipe lines and appurtenances thereto shall be maintained."
 
 
 7
 The expenditures capitalized as right-of-way costs include roddage paid to grantors, payments for consent of tenants, notary fees, recording fees, abstract fees, legal fees and other expenses incurred in securing the easements. There is no dispute as to the validity of the amount capitalized as right-of-way costs which aggregated $938,004.49 in 1946 and had grown to $1,509,272.04 in 1951.
 
 
 8
 During all of the taxable years here involved, plaintiff on its books included its right-of-way costs in its depreciable operating property, and charged current income for the recovery of the cost of right-of-way at the rate of 3½% per year, and likewise deducted depreciation on such basis in its income tax returns.
 
 
 9
 From 1930 to 1943 the Commissioner permitted taxpayer to deduct depreciation on its pipe line right-of-way. Taxpayer was informed that the Commissioner had changed his position to conform to an unpublished ruling pertaining to pipe line depreciation, a copy of which ruling taxpayer was unable to obtain.
 
 
 10
 Plaintiff contends that it is entitled to a right-of-way depreciation deduction based upon exhaustion by virtue of Section 23 of the Internal Revenue Code of 1939, 26 U.S.C.A. § 23, which so far as here material provides:
 
 
 11
 "Deductions from gross income in computing net income there shall be allowed as deductions: * * *
 
 
 12
 "(l) [As amended by Sec. 121(c), Revenue Act of 1942, c. 619, 56 Stat. 798] Depreciation. A reasonable allowance for the exhaustion, wear and tear (including a reasonable allowance for obsolescence) —
 
 
 13
 "(1) of property used in the trade or business, or
 
 
 14
 "(2) of property held for the production of income."
 
 
 15
 We shall first consider some general principles applicable to these appeals. It is well established that the Commissioner's determination is presumptively correct. The burden is upon the taxpayer to show that it is erroneous. Welch v. Helvering, 290 U.S. 111, 115, 54 S.Ct. 8, 78 L.Ed. 212; Union Electric Co. v. Commissioner, 8 Cir., 177 F.2d 269, 273.
 
 
 16
 "In a nonjury case, this Court may not set aside a finding of fact of a trial court unless there is no substantial evidence to sustain it, unless it is against the clear weight of the evidence, or unless it was induced by an erroneous view of the law." Neely v. Boland Manufacturing Co., 8 Cir., 274 F.2d 195, 201; Cleo Syrup Corporation v. Coca-Cola, 8 Cir., 139 F.2d 416, 418, 150 A.L.R. 1056.
 
 
 17
 We fully agree with the government's contention that an allowance for deductions from gross income does not turn upon general equitable considerations. Deductions are a matter of legislative grace and statutory authority must be found for such deductions. Deputy v. duPont, 308 U.S. 488, 493, 60 S.Ct. 363, 84 L.Ed. 416; Greenspon v. Commissioner, 8 Cir., 229 F.2d 947, 954.
 
 
 18
 We believe that the taxpayer has met all of the requirements of the authorizing statute in proving its claim here asserted. The right-of-way here involved constitutes property. The parties concede that the right-of-way is intangible property and we shall so assume. We observe here, however, that the statute itself makes no distinction between tangible and intangible property. If the taxpayer's income producing property is undergoing exhaustion, the statute authorizes a depreciation deduction. Neither the Commissioner nor the trial court take the position that the right-of-way is a type of property that cannot be subject to exhaustion and hence depreciation. They concede that the time will come when the taxpayer will be entitled to the depreciation deduction and that a deduction is allowable when the duration of the easement can be ascertained with sufficient definiteness.
 
 
 19
 It is undisputed that the right-of-way is used in the taxpayer's trade or business and that it is also property held for the production of income. As heretofore stated, the amount of taxpayer's investment in the right-of-way easement is undisputed.
 
 
 20
 It is clearly established by the evidence that taxpayer's right-of-way easements are assets subject to exhaustion. The trial court recognized that the useful life of the rights-of-way depended upon the period of time that the taxpayer's transmission line could be successfully operated and that this in turn depended on the supply of natural gas available to the taxpayer. The court, among other things, states:
 
 
 21
 "Natural gas is an irreplaceable natural resource. It is recognized that the production of natural gas must result in its depletion and eventually in the exhaustion of the supply. The point is underscored by the 1948 report of the National Gas Investigation, Federal Power Commission. `It is an accepted fact that natural gas is a wasting asset and that for every pool discovered, there is one less to be found.'" Northern Natural Gas Co. v. O'Malley, D.C., 174 F.Supp. 176, 180.
 
 
 22
 "There is no question, from what has been stated, that the taxpayer's rights-of-way are, in some manner, undergoing exhaustion." Id., at page 185.
 
 
 23
 "* * * accepting that the exhaustion of natural gas reserves is a condition upon which the useful life or value of the rights-of-way would cease, has the taxpayer shown with sufficient definiteness when this condition will occur?" Id., at page 185.
 
 
 24
 Judged by the express terms of Section 23(l), the finding of the existence of exhaustion upon the basis of substantial evidence entitles the taxpayer to some allowance for depreciation. The statute contains no provision requiring that the exhaustion must be capable of measurement with any specified degree of definiteness or certainty. The taxpayer's proof in support of the depreciation deduction will be discussed hereinafter.
 
 
 25
 The authorizing statute states that deduction "shall" be allowed. "Shall" is ordinarily the language of command. Anderson v. Yungkau, 329 U.S. 482, 485, 67 S.Ct. 428, 91 L.Ed. 436.
 
 
 26
 It is our belief that the statute authorizing the deduction is mandatory and not permissive, and requires the Commissioner to grant the deduction to a taxpayer who brings his claim within the provision of the statute.
 
 
 27
 In Burnet v. Niagara Falls Brewing Co., 282 U.S. 648, 51 S.Ct. 262, 75 L.Ed. 594, the Supreme Court rejected the Commissioner's contention that the obsolescence deduction, which arises out of the same statute as the one we are now considering, was not established with sufficient definiteness. In that case the obsolescence was caused largely by the impact of the prohibition amendment upon the brewery business. The court, after stating that tax laws are to be liberally construed in favor of taxpayers, continues:
 
 
 28
 "It would be unreasonable and violate that canon of construction to put upon the taxpayer the burden of proving to a reasonable certainty the existence and amount of obsolescence. Such weight of evidence as would reasonably support a verdict for a plaintiff in an ordinary action for the recovery of money fairly may be deemed sufficient. Neither the cost of obsolescence nor of accruing exhaustion, wear and tear that is properly chargeable in any period of time can be measured accurately. A reasonable approximation of the amount that fairly may be included in the accounts of any year is all that is required." At pages 654, 655 of 282 U.S., at page 265 of 51 S.Ct.
 
 
 29
 In United States v. Ludey, 274 U.S. 295, 47 S.Ct. 608, 71 L.Ed. 1054, the Supreme Court reversed the lower court decision which held that no depletion or depreciation deduction was allowable because the amount of taxpayer's oil reserves could not be definitely determined. The court states:
 
 
 30
 "The reserves are recognized as wasting assets. The depletion effected by operation is likened to the using up of raw material in making the product of a manufacturing establishment. As the cost of the raw material must be deducted from the gross income before the net income can be determined, so the estimated cost of the part of the reserve used up is allowed. The fact that the reserve is hidden from sight presents difficulties in making an estimate of the amount of the deposits. The actual quantity can rarely be measured. It must be approximated. And because the quantity originally in the reserve is not actually known the percentage of the whole withdrawn in any year, and hence the appropriate depletion charge, is necessarily a rough estimate. But Congress concluded, in the light of experience, that it was better to act upon a rough estimate than to ignore the fact of depletion." At page 302 of 274 U.S., at page 610 of 47 S.Ct.
 
 
 31
 "* * * It is argued that, because oil is a fugacious mineral, it cannot be known that the reserve has been diminished by the operation of wells. Perhaps some land may be discovered which, like the widow's cruse, will afford an inexhaustible supply of oil. But the common experience of man has been that oil wells, and the territory in which they are sunk, become exhausted in time. Congress in providing for the deduction for depletion of oil wells acted on that experience. Compare Lynch v. Alworth-Stephens Co., 267 U.S. 364 [45 S.Ct. 274, 69 L.Ed. 660]. In essence, the deduction for depletion does not differ from the deduction for depreciation." At page 303 of 274 U.S., at page 611 of 47 S.Ct.
 
 
 32
 The Board of Tax Appeals in Illinois Pipe Line Co. v. Commissioner, 37 B.T. A. 1070, at page 1080, states:
 
 
 33
 "Deductions for depreciation are dependent upon estimates and never can be absolutely accurate."
 
 
 34
 Both the Commissioner and the taxpayer cite the case of Union Electric Co. v. Commissioner, supra, in support of their respective contentions. While the factual situation in Union Electric is not exactly the same as here presented, the case comes as close as any that we have found bearing upon our present problem. In Union Electric, the property as to which exhaustion was claimed and allowed, was the right-of-way used for transmission lines carrying the electricity from its source in the Bagnell Dam to St. Louis. The court there found that the easements had no value except as they were used in connection with the power plant at the dam and that the easements would become useless when that source of electricity ceased to exist.
 
 
 35
 Similarly, here the pipe line right-of-way will be without value when there is no gas to transport. The statute and regulation considered in Union Electric were substantially the same as those here involved. It is true, as the government contends, that the court treated regulation 29.23(l)-3 hereinafter set out, as valid. No attack was made in that case upon the regulation. The Tax Court in Union Electric had found that the useful life of the dam was 100 years. No discussion appears in the opinion as to the meaning of the words "definitely limited" or "reasonable certainty", in connection with the estimate of the duration of the source of electric power. The government accepted the Tax Court's finding as to the useful life of the dam. It is obvious that the period of duration of the dam could not be determined with any degree of exactness. The Tax Court, to arrive at its duration determination, necessarily gave the words "definitely limited" and "reasonable certainty" a rather broad interpretation.
 
 
 36
 An important factor in determining the usefulness of the dam was the period of time that would be required for the lake bed to fill with silt and render the dam useless. When this would occur was dependent on many unknown and uncertain factors. If it is possible to estimate the life of a dam within the meaning of the statute, it should be equally possible to estimate the life of gas reserves.
 
 
 37
 It should be noted that Union Electric is definite authority for the proposition that transmission line rights-of-way created for a limited period are under appropriate circumstances subject to depreciation deduction for exhaustion.
 
 
 38
 The Commissioner in support of his contention that the court properly denied the deduction does not rely upon the statute above cited and quoted, but places his reliance upon Regulation 111, Sec. 29.23(l)-3, which reads:
 
 
 39
 "Depreciation of Intangible Property. — Intangibles, the use of which in the trade or business or in the production of income is definitely limited in duration, may be the subject of a depreciation allowance. Examples are patents and copyrights, licenses, and franchises. Intangibles, the use of which in the business or trade or in the production of income is not so limited, will not usually be a proper subject of such an allowance. If, however, an intangible asset acquired through capital outlay is known from experience to be of value in the business or in the production of income for only a limited period, the length of which can be estimated from experience with reasonable certainty, such intangible asset may be the subject of a depreciation allowance. * *"
 
 
 40
 The trial court's opinion appears to be based largely upon its interpretation of the regulation just cited, rather than upon the statute. The trial court thus states the issue:
 
 
 41
 "The first issue encountered, as restated in the language of the regulation, is whether the use of the easements is definitely limited in duration or, if not, whether the easements are known to be of value in the business for only a limited period, the length of which can be estimated from experience with reasonable certainty. In either case, if this were so, the asset would by definition be susceptible of measurement and therefore subject to depreciation. * * * "To sharpen the issue, we may say that an intangible asset is by law depreciable when the period over which its full exhaustion will occur is definitely limited, permitting partial exhaustion to be ascertained. But when that time is unsusceptible of measurement, an allowance for depreciation is inappropriate as lacking a justifiable basis. The conclusion follows: it is not enough that the taxpayer show property to be undergoing exhaustion as a basis for claiming a depreciation allowance. The taxpayer must show as well that it is undergoing exhaustion in a definitely limited (i. e., necessarily ascertainable) period of time. The time in which depreciation is occurring, rather than the fact that it is occurring, becomes of crucial importance in the case." 174 F.Supp. 179, 180.
 
 
 42
 Statutes are the primary authority for determining the scope of authorized deductions. Trust of Bingham v. Commissioner, 325 U.S. 365 at page 377, 65 S.Ct. 1232, 89 L.Ed. 1670; Manhattan General Equipment Co. v. Commissioner, 297 U.S. 129, at page 134, 56 S.Ct. 397, 80 L.Ed. 528; Boykin v. Commissioner, 8 Cir., 260 F.2d 249, at page 254.
 
 
 43
 The rule that applies, as stated by the Supreme Court in Manhattan General Equipment Co., supra, at pages 134 and 135 of 297 U.S., at page 400 of 56 S.Ct., is as follows:
 
 
 44
 "The power of an administrative officer or board to administer a federal statute and to prescribe rules and regulations to that end is not the power to make law, for no such power can be delegated by Congress, but the power to adopt regulations to carry into effect the will of Congress as expressed by the statute. A regulation which does not do this, but operates to create a rule out of harmony with the statute, is a mere nullity. * * *
 
 
 45
 "* * * The statute defines the rights of the taxpayer and fixes a standard by which such rights are to be measured. The regulation constitutes only a step in the administrative process. It does not, and could not, alter the statute."
 
 
 46
 The primary function of a regulation is to interpret an ambiguous statute and clarify its meaning. If the statute is unambiguous, there is no room for construction. A right clearly created by statute cannot be taken away by regulation. Helvering v. Oregon Mutual Ins. Co., 311 U.S. 267, 61 S.Ct. 207, 85 L.Ed. 180; Koshland v. Helvering, 298 U.S. 441, 56 S.Ct. 767, 80 L.Ed. 1268; Helvering v. Northwestern Nat. Bank & Trust Co., 8 Cir., 89 F.2d 553; Slough v. Commissioner, 6 Cir., 147 F.2d 836; Walling v. Baltimore Steam Packet Co., 4 Cir., 144 F.2d 130; Busey v. Deshler Hotel Co., 6 Cir., 130 F.2d 187, 142 A.L. R. 563.
 
 
 47
 Mertens, Law of Federal Income Taxation, Volume I, § 3.21, states:
 
 
 48
 "The Treasury may not make an arbitrary or unreasonable Regulation, nor can it restrict or enlarge the scope of a statute."
 
 
 49
 Numerous authorities are cited in footnote 82 in support of the text.
 
 
 50
 In interpreting a regulation, courts will ordinarily avoid a construction which raises doubt as to the validity of the regulation. Newman v. Commissioner, 5 Cir., 76 F.2d 449, 452; Mertens, Law of Federal Income Taxation, Volume I, § 3.21.
 
 
 51
 The depreciation deduction authorized by Section 23(l) of the Code by its terms applies to a broad field of property. However, all property is not subject to depreciation based upon exhaustion. It is well established that real estate exclusive of the improvements thereon is not subject to exhaustion, and hence not subject to depreciation. As Judge Blackmun points out in his concurring opinion, courts have rather uniformly held that property such as good will, subscription lists and perpetual franchises, is not subject to depreciation deduction.
 
 
 52
 It must be conceded that the regulations serve a useful purpose in providing guidance for the determination of the type of property subject to depreciation and the method of computation of allowable depreciation. The regulations, to the extent that they are not inconsistent with the rights granted by statute, must be respected and followed.
 
 
 53
 The writer fully agrees with the view expressed by Judge Blackmun that Regulation 29.23(l)-3 cannot be viewed and interpreted in isolation. The regulation is part of a group of comprehensive regulations dealing with the depreciation deduction and all such regulations should properly be construed together as a whole. As Judge Blackmun points out, Regulations 29.23(l)-3, 29.23(l)-5, and 29.23(m)-9 are especially pertinent to the interpretation problem presented by this case.
 
 
 54
 For the reasons hereinafter pointed out, and for the additional persuasive reasons set out by Judge Blackmun in his concurring opinion, we do not believe that the pertinent regulations when fairly interpreted are repugnant to the right to the depreciation deduction granted by statute, and hence the question of the invalidity of the regulation, upon the ground that the regulations are inconsistent with the statute they interpret, is not reached for decision.
 
 
 55
 The government urges that the rights-of-way do not meet the standard of the regulation requiring the asset to be definitely limited in duration. It is true that the easements contain no provision to the effect that the easements are granted only for a specific number of years, and it is likewise true that no one can say with absolute certainty the number of years that the rights-of-way may be useful to the taxpayer for purposes of transporting gas. We do not believe that the regulation requires proof of the exact number of years the easements will continue. We believe that all that is required is definite proof that the asset is one definitely undergoing exhaustion. The evidence clearly establishes that the rights-of-way will be useful for taxpayer's purposes for only a limited period, and the court so found. The uncertainty relates to the length of the period. Moreover, Regulation 1.167 (a)-3,[1] under Income Tax Regulations, 1954, interpreting Section 167(a) of the Internal Revenue Code of 1954, 26 U.S. C.A. § 167(a) which is substantially the same statute as 23(l) here under consideration, eliminates the word "definitely" preceding the word "limited".
 
 
 56
 The government appears more especially to rely upon the words in the fourth sentence of Regulation 29.23(l)-3 limiting the depreciation allowance to intangible assets "known from experience to be of value in the business or in the production of income for only a limited period, the length of which can be estimated from experience with reasonable certainty." "Estimate" has been defined as "to fix the worth, value, size, extent, etc., roughly or in a general way." Webster's New International Dictionary, 2d Ed. The word "reasonable" modifying the word "certainty" is a flexible word frequently used in law. Reasonable care, reasonable time, reasonable doubt, are illustrations of the use of the modifying word "reasonable".
 
 
 57
 In Diamond Alkali Co. v. Heiner, 3 Cir., 60 F.2d 505, 512, where the court was concerned with the meaning of reasonable deduction for amortization, the court said:
 
 
 58
 "While a `reasonable' allowance is not defined in the statutes, we have hereinabove defined it as one that is just, fair, and equitable."
 
 
 59
 In Le Cuno Oil Co. v. Smith, Tex.Civ. App., 306 S.W.2d 190, at page 195, we find:
 
 
 60
 "`Reasonable' has had many definitions by the courts and its meaning is shaded and varied by the context in which it is used, it is a relative term and the facts of a particular controversy may affect its meaning, frequently it is used to mean just, fair, honest or equitable. 36 Words and Phrases, Reasonable, p. 258."
 
 
 61
 Regulation 111, 29.23(l)-5, provides in part:
 
 
 62
 "Method of Computing Depreciation Allowance. — The capital sum to be recovered shall be charged off over the useful life of the property, either in equal annual installments or in accordance with any other recognized trade practice, such as an apportionment of the capital sum over units of production. Whatever plan or method of apportionment is adopted must be reasonable and must have due regard to operating conditions during the taxable period. The reasonableness of any claim for depreciation shall be determined upon the conditions known to exist at the end of the period for which the return is made. If the cost or other basis of the property has been recovered through depreciation or other allowances no further deduction for depreciation shall be allowed. The deduction for depreciation in respect of any depreciable property for any taxable year shall be limited to such ratable amount as may reasonably be considered necessary to recover during the remaining useful life of the property the unrecovered cost or other basis."
 
 
 63
 The trial court, in dealing with the regulation just cited, states:
 
 
 64
 "Once it is ascertained that the useful life of the assets is susceptible of measurement, time-wise, it is true that the amount (or rate) of depreciation proposed to be taken need only be shown as reasonable. There is no requirement that it must be ascertained to a certainty. The question is settled by Section 29.23(l)-5, Treasury Regulation 111, which concerns the amount of depreciation to be taken on depreciable property." 174 F.Supp. at page 179.
 
 
 65
 The trial court took the position that the regulation applied only after it had first been definitely established by evidence that the useful life of the right-of-way is susceptible of measurement, time-wise. The court's opinion as a whole reflects that it applied a strict and rigid standard in determining whether the period of exhaustion had been established. On some eight occasions in the course of his opinion, in speaking of the period of exhaustion, the court uses words such as "definitely limited", "definitely ascertainable", "fixed time", and "definite time". The court states that Regulation 29.23(l)-5 cannot be considered in determining the right to a deduction but only becomes operative after such right is established. No cases are cited or found supporting the trial court's position in this respect. We can see no reason why the provision of the regulation cannot be considered along with other factors in determining the existence of depreciation.
 
 
 66
 In Denise Coal Co. v. Commissioner, 3 Cir., 271 F.2d 930, 936, a coal company doing strip mining was required by state statute to rehabilitate the stripped land, upon the completion of the mining operation. The Commissioner and the Tax Court denied a deduction for the recovery of the estimated rehabilitation cost, on the basis that such cost could not be accurately estimated with reference to the time that might be required or as to cost. In reversing, the Court of Appeals states:
 
 
 67
 "We do not think that we should expect from taxpayers in this case, or any other, the ability to estimate cost of this kind with mathematical precision. At best it must be an estimate and if made reasonably should be allowed even though the estimate proves too small or too large. The taxpayer on an accrual system of accounting will not have his books `clearly reflect' the state of his income if he does not make such a reserve, and the statute requires that a taxpayer's books shall `clearly reflect' his income. Int.Rev. Code of 1939, § 41, 26 U.S.C. § 41. We think it is good business and good accounting and, therefore, ought to be good tax law to allow a reasonable estimate to be set up as a reserve for the fulfillment of this statutory obligation."
 
 
 68
 When, as here, a decision turns upon the meaning of words in a statute or regulation, a legal question is presented. Trust of Bingham v. Commissioner, 325 U.S. 365, 65 S.Ct. 1232, 89 L.Ed. 1670. At page 371 of 325 U.S., at page 1236 of 65 S.Ct. of the case just cited, the court states:
 
 
 69
 "Since our decision in the Dobson case [Dobson v. Commissioner, 320 U.S. 489, 64 S.Ct. 239, 88 L.Ed. 248] we have frequently reexamined, as matters of law, determinations by the Tax Court of the meaning of the words of a statute as applied to facts found by that court."
 
 
 70
 Numerous supporting cases are cited in a footnote.
 
 
 71
 We are convinced that the trial court committed error in construing too narrowly the right to depreciation given the taxpayer by the statute and regulations heretofore discussed, and hence we believe that its decision was induced by an erroneous view of the applicable law.
 
 
 72
 The taxpayer offered voluminous and specific evidence as to its reserves. Evidence, expert and otherwise, as to the reserve life of its gas supply was also offered. The reserve life is computed upon several theories. Much of the evidence as to reserves and reserve life is set out in the trial court's opinion. With reference to the evidence, the trial court made, among others, the following observations:
 
 
 73
 "Should our inquiry be limited to a consideration of the reasonableness of the rate of depreciation, this Court would not hesitate to say that the taxpayer has gone a long way towards establishing its case." 174 F.Supp. at page 178.
 
 
 74
 "These factors appear to indicate that the proven reserves ought not be considered available for long distance transmission to the extent that the reserve life tables suggest. The taxpayer estimated that, all things considered, its proven reserves at the end of each of the taxable years were adequate only for a period somewhere between 14 or 15 and 25 years." Id., at page 184.
 
 
 75
 "In resting its case upon the annual estimate of reserves, we are aware that the taxpayer was following the requirements of the Federal Power Commission. This is the basis for passing upon such matters as the taxpayer's applications for certificates of extensions of facilities or the adequacy of proposed rates for gas to be sold. It is also the basis used by the taxpayer in preparing registration certificates for the Securities and Exchange Commission, and for reporting information to investors and prospective investors in the taxpayer's securities. Generally it is the basis used by management in the conduct of the affairs of its business; in turn, all of the agencies, investors, and financial institutions with which the taxpayer deals base their action on the reserves owned or controlled by the taxpayer." Id., at page 189.
 
 
 76
 We have examined the record and believe that the taxpayer has produced all the evidence that was reasonably available to it bearing upon the quantity and life of its reserves. Our examination of the trial court's opinion leads us to believe that he reached a similar conclusion. The trial court, however, apparently was of the view that a different standard is imposed in tax cases, and that proof that would satisfy other agencies as to the extent and duration of the reserve would not serve such purpose in the present case. We have no doubt that Congress could specify that different standards be used in determining reserves and reserve life in tax cases. However, Congress has not prescribed any special standards to be considered in the depreciation field. We therefore believe evidence that is sufficient to establish reserves and reserve life in proceedings before the Federal Power Commission, the Securities and Exchange Commission, and for general purposes, should afford sufficient evidence for tax purposes. See Burnet v. Niagara Falls Brewing Co., supra.
 
 
 77
 The court also found that there was no inseparable connection between taxpayer's proven reserves and its pipe line rights-of-way, so that the estimated life of the reserves does not measure the period of usefulness of the pipe line rights-of-way to the taxpayer. There is in the record evidence to the effect that as time progressed the taxpayer acquired additional reserves both by purchase and by development of its own leases. Such increased reserves are offset to considerable extent by the enlargement of the taxpayer's pipe line facilities and the corresponding increase in gas sales.
 
 
 78
 The taxpayer insists that it is entitled to have depreciation determined in accordance with the provisions of Regulation 29.23(l)-5, heretofore quoted, particularly that part stating that depreciation should be determined upon conditions known to exist at the end of the tax period for which the return is made. We believe that the taxpayer's contention in this respect finds support in our decision in Union Electric, supra. In that case this court rejected the Commissioner's contention that a new dam or source of power might be available after 100 years, stating:
 
 
 79
 "In this the Commissioner does not take into account the principle that the right to deductions for depreciation does not depend upon mere possibilities. Commissioner v. Philadelphia Coke Co., 3 Cir., 130 F.2d 87, certiorari denied 317 U.S. 685, 63 S.Ct. 259, 87 L.Ed. 549. It may be that after 100 years another dam will replace the present one but it is also possible that the reservoir will at that time be filled with silt rendering the construction of a new dam useless. The finding of the Tax Court that all these rights are inseparably linked with the useful life of the present dam and that their costs are and should be considered as a part of the depreciable costs of the plant is a reasonable conclusion based upon conceded or established facts." 177 F.2d at page 275.
 
 
 80
 The possibility in Union Electric that a new dam might be built to create additional power is analogous to the Commissioner's contention here that new sources of gas reserves may later be found.
 
 
 81
 There is likely a basis for a difference of opinion under the evidence in this case as to the amount of taxpayer's reserves at the end of each taxable year and as to the amount of gas exhausted each year. There are also various formulas used for computing reserve life, as disclosed by the trial court's opinion, and there is room for dispute as to which formula should be applied. Since the trial court found the taxpayer was entitled to no depreciation on its pipe line right-of-way, the court made no computation of the deduction. There is language in the court's opinion that tends to indicate that the return claimed by the taxpayer is reasonable if a deduction is allowable. However, the court is not bound by such statement.
 
 
 82
 Where a taxpayer shows he is entitled to some deduction but cannot definitely show how much, the court should not deny all deduction but should make as close an approximation of the deduction as it can. Cohan v. Commissioner, 2 Cir., 39 F.2d 540; Rugel v. Commissioner, 8 Cir., 127 F.2d 393; Walter M. Joyce, 25 T.C. 13.
 
 
 83
 The judgment, insofar as it denies taxpayer any deduction for depreciation on its pipe line rights-of-way, is reversed on the ground that such judgment was induced by an erroneous view of the law. The case is remanded to the trial court for the purpose of determining the deduction for depreciation the taxpayer is entitled to, and the amount of tax that has been erroneously assessed and collected, and for further proceedings not inconsistent with the views expressed in this opinion.
 
 
 
 Notes:
 
 
 [1]
 Regulation 1.167(a)-3, Internal Revenue Code, 1954, provides in part: "If an intangible asset is known from experience or other factors to be of use in the business or in the production of income for only a limited period, the length of which can be estimated with reasonable accuracy, such an intangible asset may be the subject of a depreciation allowance."
 
 
 
 84
 BLACKMUN, Circuit Judge (concurring).
 
 
 85
 I concur in Judge VAN OOSTERHOUT'S opinion. Because, however, I reach his result with somewhat different emphases, I make these additional comments:
 
 
 86
 1. The standards of the statute and the Regulations. § 23(l) (1) of the 1939 Code creates for this taxpayer three conditions for its claimed depreciation deduction: (1) that the asset be an exhausting one; (2) that it be used in the trade or business; and (3) that the allowance be reasonable. The statute itself does not distinguish between tangible and intangible assets and it says nothing by way of disqualifying an asset for depreciation merely because it is an intangible. Neither does the statute say in so many words that an asset, to be depreciable, must have a definitely limited life. It requires only that the allowance be "reasonable."
 
 
 87
 Treasury Regulations 111, issued under the 1939 Code, attempt to reach these details. § 29.23(l)-3 deals with intangible property; § 29.23(l)-5 concerns itself with the method of computing depreciation; and § 29.23(m)-9 has to do with the determination of contents of mines and of oil and gas wells. These three sections taken together — and I feel that they are not separable — would establish what appear to be seven conditions for this taxpayer's deduction for depreciation of its intangible rights-of-way: (1) that they be acquired through a capital outlay; (2) that they be used in the trade or business; (3) that they be "definitely limited in duration", or "of value * * * for only a limited period", i. e., exhausting; (4) that this period be capable of estimation from experience; (5) that the period also be capable of estimation with reasonable certainty; (6) that the determination be upon conditions known to exist at the end of the taxable period; and (7) that the estimate be made according to the method current in the industry and in the light of the most accurate and reliable information obtainable. The Regulations thus would supply an interpretation of the statutory requirement of reasonableness. I feel that this interpretation is itself reasonable and proper enough and I have no great difficulty in concluding that these sections of the Regulations are valid.
 
 
 88
 2. The application of these standards here. The basic conflict between the Commissioner and the taxpayer lies in the area of application of these standards and, because the Commissioner does not really challenge the exhausting character of the rights-of-way (the district court found that those assets were undergoing exhaustion, at page 185 of 174 F.Supp.), it centers on the question of whether the rights-of-way have an ascertainable life. The taxpayer argues that proven reserves have a definite significance in the industry; that they are determined with reasonable accuracy; that consumption of gas in the past is known and in the future can be estimated with reasonable certainty; that proven reserves and consumption have a relationship which, with proper adjustments, results in a limited supply period; and that, therefore, the standards of the statute and the Regulations are adequately met in the light of known facts as of the end of each taxable year. The Commissioner says that this is not realistic; that proven reserves to a large extent are artificial because they are limited by economic and operational considerations; that the taxpayer has unproved acreage and prospective acreage; that its and the industry's history shows an ability to connect facilities with new sources of supply; that if known reserves increase, as they have, the determination of useful life of rights-of-way is exceedingly difficult; that gas not presently owned by the taxpayer will certainly pass through its lines in the future; and that, therefore, there is no reasonable relationship between proven reserves and the life of the rights-of-way.
 
 
 89
 The Commissioner's argument has force. There are instances where the courts have refused a depreciation deduction for an intangible asset with an elusive life length. Nachman v. Commissioner, 5 Cir., 191 F.2d 934; KWTX Broadcasting Co. v. Commissioner, 5 Cir., 272 F.2d 406; Meredith Publishing Co. v. Commissioner, 8 Cir., 64 F.2d 890, certiorari denied 290 U.S. 646, 54 S.Ct. 64, 78 L.Ed. 560; National Weeklies v. Commissioner, 8 Cir., 137 F.2d 39; Dodge Bros. v. United States, 4 Cir., 118 F.2d 95; International Textbook Co. v. United States, Ct.Cl., 44 F.2d 254; Coca-Cola Bottling Co. v. Commissioner, 6 B.T.A. 1333; Shufflebarger v. Commissioner, 24 T.C. 980. Compare Pasadena City Lines, Inc. v. Commissioner, 23 T.C. 34. These cases, however, all involve good will, subscription lists, renewable licenses, or perpetual franchises and do not seem to me to control the facts here. On the other hand, as Judge Van Oosterhout has noted, this court has recognized a deduction for depreciation of rights-of-way under appropriate circumstances. Union Electric Co. v. Commissioner, 8 Cir., 177 F.2d 269, 275. The case before us, therefore, comes down to the question of proof.
 
 
 90
 The Commissioner's insistence in this case that there be a fixed and definitely limited period of time must equate only with the practical need of a measure. But that measure need not be one determined with precision accuracy and be good for all time. A "reasonable approximation" or even "a rough estimate", say the Niagara Falls and Ludey cases, is enough. In this light, the elements involved here, namely, proven reserves, production, reserve life index, load factor and the others, become acceptable for consideration in the absence of proof that they are wholly fallacious. These elements at first glance may seem to be difficult of application, but, if so, the difficulty bears upon only computational aspects and not upon basic eligibility. The amount of the deduction will change from year to year as proven reserves change and as additional costs of rights-of-way may be incurred. These changes are only computational but, when properly taken into account, they prevent the complete consumption, through deductions, of rights-of-way costs before the end of the rights-of-way life. There is thus no premature recovery of these costs.
 
 
 91
 In my judgment, therefore, the taxpayer, who has the burden of proof, has met the seven conditions above described and has sustained that burden. Its case may be thin and not overwhelming but I feel that, on the record here, it has been established and that the Commissioner has not succeeded in undermining it. Furthermore, the result seems to me to coincide with good business practice and good accounting.
 
 
 92
 3. The inconsistency in the Commissioner's position. I feel, too, that the Commissioner's positive emphasis and insistence here upon the necessity of a definitely limited period of time involves a basic inconsistency with his historic stand on depreciation and depletion allowances.
 
 
 93
 Under the income tax laws a corporation since March 1, 1913, has been permitted to deduct a "reasonable allowance" for depreciation or for exhaustion of property used in the trade or business.[1] Similarly, since March 1, 1913, a corporation has been permitted to deduct a "reasonable allowance" for depletion, to some extent at least, of mines, oil and gas wells, and other natural deposits.[2] The successive regulations issued under the depreciation sections of the respective Revenue Acts read substantially the same as the pertinent sections of Regulations 111 under the 1939 Code so far as they stress the concept of reasonable certainty.[3] In determining the depletion allowance the Regulations permit, where adjusted cost basis of the property rather than a percentage of gross income is utilized, a computation based upon a determination of remaining units. For this there is established a standard of what is "reasonably known, or on good evidence believed, to have existed," and revision of the estimate from time to time is contemplated. Regulations 111, § 29.23(m)-9 under the 1939 Code. See also, as to other periods, Title 26 C.F.R. § 1.611-2(c) under the 1954 Code, and corresponding sections of prior regulations.
 
 
 94
 Depletion and depreciation allowances to a large extent are similar and parallel.[4] If, in the determination of a deduction for depletion, when computed upon adjusted cost basis, a distinct element of estimate is properly involved and contemplated, the presence of a like element of estimate in the determination of a deduction for depreciation is neither fatal nor disqualifying. Indeed, this has always been so, and one familiar with the application of our income tax laws over a period of years has been aware of recurring adjustments made by the taxpayer or periodically proposed, often on a wide scale, by the Commissioner in even such a common item as building depreciation.
 
 
 95
 I therefore regard an estimate in the computation of depreciation of an intangible asset, so long as it is reasonable, as much available to the taxpayer as an estimate in the computation of depletion. If and to the extent the Commissioner's position here would establish a more rigorous standard for depreciation than it does for depletion, that position, I feel, involves an inconsistency not warranted by the statutes or by the Commissioner's own successive regulations.
 
 
 
 Notes:
 
 
 [1]
 Revenue Act of 1913, § II G(b); Revenue Act of 1916, § 12(a) Second; Revenue Act of 1918, § 234(a) (7); Revenue Act of 1921, § 234(a) (7); Revenue Act of 1924, § 234(a) (7); Revenue Act of 1926, § 234(a) (7); Revenue Act of 1928, § 23(k); Revenue Act of 1932, § 23(k); Revenue Act of 1934, § 23(l); Revenue Act of 1936, § 23(l); Revenue Act of 1938, § 23(l); Internal Revenue Code of 1939, § 23(l); Internal Revenue Code of 1954, § 167(a).
 
 
 [2]
 Revenue Act of 1913, § II G(b); Revenue Act of 1916, § 12(b) Second; Revenue Act of 1918, § 234(a) (9); Revenue Act of 1921, § 234(a) (9); Revenue Act of 1924, § 234(a) (8); Revenue Act of 1926, § 234(a) (8); Revenue Act of 1928, § 23(l); Revenue Act of 1932, § 23(l); Revenue Act of 1934, § 23(m); Internal Revenue Code of 1939, § 23(m); Internal Revenue Code of 1954, § 611(a), 26 U.S.C.A. § 611(a).
 
 
 [3]
 Regulations 45, Article 163 under the 1918 Act; Regulations 62, Article 163 under the 1921 Act; Regulations 65, Article 163 under the 1924 Act; Regulations 69, Article 163 under the 1926 Act; Regulations 74, Article 203 under the 1928 Act; Regulations 77, Article 203 under the 1932 Act; Regulations 86, Article 23(l)-3 under the 1934 Act; Regulations 94, Article 23(l)-3 under the 1936 Act; Regulations 101, Article 23(l)-3 under the 1938 Act; Regulations 103, § 19.23(l)-3 under the 1939 Code; Title 26 C.F.R. § 1.167(a)-3 under the 1954 Code.
 
 
 [4]
 "In essence the deduction for depletion does not differ from the deduction for depreciation." United States v. Ludey, 274 U.S. 295, 303, 47 S.Ct. 608, 611, 71 L.Ed. 1054
 
 
 
 96
 JOHNSEN, Chief Judge (dissenting).
 
 
 97
 The taxpayer seeks to equate the useful life of its pipeline easements with the estimated duration of the gas supply of its proven reserves held in the tax years involved. The majority accept such an identity of limitation for allowing the taxpayer to recover its costs of these rights-of-way.
 
 
 98
 I should have no difficulty in agreeing, if the taxpayer's proven reserves for those years actually were determinative of the useful life of the easements in its business. Indeed, to avoid dissenting, I would go along with the result here, if the record suggested even a possibility that such a relationship as to limitation might at some time during such period perhaps come to exist.[1]
 
 
 99
 The fact is, however, that the record affords no basis for either of these premises. To the contrary, the history and operations of the taxpayer, I think, disprove the reality of any such specific or immediate relationship as has been recognized, whether the limitation is predicated on the proven reserves held during the tax years involved or on those which have been held at any other time since the corporation commenced to do business 30 years ago.
 
 
 100
 During the 30 years that the taxpayer has been operating, it has regularly taken on additional proven reserves in the area served by the easements involved, in order to keep the limitation figure for exhaustion of its ready gas supply as an enduring constant each year in its business; it has admittedly never had any difficulty in so doing; and it has not pointed out anything which could prevent it from thus operating, or which indicates a lack of intent on its part to continue doing so, into the indefinite future.
 
 
 101
 The effect of this is that the taxpayer (as well as other gas companies generally) has maintained as a practical constant, in terms of its present and projected needs, and not as an operational limitation, the supply of gas with which it conducts its business. The extent of proven reserves carried by it during the tax years involved, or during any of the other years it has existed, has so far primarily had the significance or equivalence in its operations of mere gas inventory. They do not, up to the present time at least, within the history of the taxpayer or the gas industry generally, provide any realistic basis for regarding the useful life of the taxpayer's easements as being limited, or being in any way measurable, by the period of duration of such particular proven reserves as the taxpayer has had.
 
 
 102
 The artificiality and unreality taxwise of the situation here seems to me to lie in the fact that, at the end of each tax year that is involved, and at the end of all the six years for which deductions are being sought, the period of useful life for the easements would still as long and valuably remain to the taxpayer for purposes of the proven reserves which it is shown by that time to have added to its inventory, as there had existed for such reserves as were being exhausted during the tax years in question.
 
 
 103
 More incongruously stated, if the taxpayer had in 1930 begun to charge off the easements which it then had, in relation to the proven reserves which it held, it would before now have fully recovered their cost, notwithstanding that such easements today have, and at all times have had, equally as much useful life in relation to the taxpayer's successive and present proven reserves as they had in relation to those of 1930.
 
 
 104
 Tax deduction must rest upon some fair basis of economic or legal reality. There is, of course, the abstract reality in the situation that the taxpayer's continuing use of proven reserves, and that of other gas companies, is resulting in some exhaustion of the general supply of gas in the area as to which the easements involved have their primary value. But it is to be noted that the amount and period of deduction here claimed and recognized do not bear any immediate relationship to the question of when the general supply of gas available from such reserves as may hereafter be proven will become exhausted. Nor does the record, it seems to me, properly reach to that question.
 
 
 105
 There is indication of the extent of the proven reserves which exist in the industry, but this is economically an artificial figure, in that it represents only such sources of supply as have been developed for the purpose of making them part of the operational inventories of the gas companies generally. New sources of gas supply have continuously been found to be available, as further proven reserves have been desired. Thus the taxpayer here holds, in the area involved, for future use, a large amount of what it regards as gas property, which it has never had need or occasion to establish as proven reserves.
 
 
 106
 Had the evidence in the record provided any competent estimate on a scientific basis of the probable amount of natural gas supply existing in both proven and unproven reserves and the probable length of time in which this would projectively be consumed, the taxpayer would, I think, have been entitled to a tax deduction on this long-range basis. This to me would present a situation comparable to that in Union Electric Co. v. Commissioner, 8 Cir., 177 F.2d 269.
 
 
 107
 It seems to me that the taxpayer has failed to establish any such period of exhaustion for its easements as is entitled to be accepted as a basis for tax recovery. A statement from Mertens, made in relation to the exhaustion of contracts, summarizes also in general my view of the present situation: "In the absence of * * * a definite and determinable duration, allowance for exhaustion will be denied even though it is apparent that the contract is becoming less valuable and exhaustion is in fact occurring. Some yardstick is necessary." Mertens, Law of Federal Income Taxation § 23.65. And the yardstick must be one that has at least some economic reality. Once the distance is reasonably capable of sound estimation, it is, of course, not necessary for the taxpayer to establish the exact amount of depreciation sustained each year through the measurable period. Id., § 23.30.
 
 
 108
 Without regard to some of the things which have been set forth in the trial court's opinion, I think it was entitled to deny the taxpayer here a recovery.
 
 
 109
 I have engaged in this expression of views, because I think that this is a test case in the gas industry generally and not simply one that relates to the immediate taxpayer's situation.
 
 
 
 Notes:
 
 
 [1]
 That period, on the taxpayer's theory and evidence, is such as to provide it with a depreciation allowance on a 3½ percent basis — and I should suspect, from the statements made in the trial court's opinion, 174 F.Supp. 176, that this is the figure and result to which the court would feel itself driven, on a remand of the case to it